UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

E.G., individually and as parent and natural       :
guardian of A.I. and L.I., minor children;         :     Index No. 20-CV-9879
M.M., individually and as parent and natural       :
guardian of E.H., L.H., Ev.P., and E.P.,           :
minor children; O.M., individually and as          :
parent and natural guardian of A.M., a minor       :
child; and COALITION FOR THE                       :
HOMELESS, on behalf of themselves and              :
all others similarly situated,                     :
                                                   :
                 Plaintiffs,                       :
                                                   :
      -against-                                    :
                                                   :
THE CITY OF NEW YORK; NEW YORK                     :
CITY DEPARTMENT OF EDUCATION;                      :
RICHARD A. CARRANZA, as Chancellor of              :
the New York City Department of Education;         :
NEW YORK CITY DEPARTMENT OF                        :
SOCIAL SERVICES; STEVEN BANKS, as                  :
Commissioner of the New York City                  :
Department of Social Services; NEW YORK            :
CITY DEPARTMENT OF HOMELESS                        :
SERVICES; JOSLYN CARTER, as                        :
Administrator of the New York City                 :
Department of Homeless Services; NEW               :
YORK CITY HUMAN RESOURCES                          :
ADMINISTRATION; GARY JENKINS as                    :
Administrator of the New York City Human           :
Resources Administration; NEW YORK CITY            :
DEPARTMENT OF INFORMATION                          :
TECHNOLOGY AND                                     :
TELECOMMUNICATIONS; and JESSICA                    :
TISCH, as Commissioner of the New York             :
City Department of Information Technology          :
and Telecommunications,                            :
                                                   :
                 Defendants.                       :
--------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................................1

FACTUAL BACKGROUND...............................................................................................................3

ARGUMENT.........................................................................................................................................6

I.     PLAINTIFFS AND OTHER CLASS MEMBERS ARE ENTITLED TO A
PRELIMINARY INJUNCTION RESTORING THEIR ACCESS TO A SOUND
BASIC EDUCATION. ...........................................................................................................6

        A.     Plaintiffs and Other Class Members Will Suffer Irreparable Harm Without
an Injunction. .............................................................................................................7

        B.     Plaintiffs Are Likely to Succeed on the Merits of Their Claims. .........................10

        C.     The Balance of Hardships Weighs in Favor of Plaintiffs.....................................13

CONCLUSION....................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Educ. v. Nyquist*,
439 N.E.2d 359 (N.Y. 1982)................................................................................16

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) ............................................................................................15

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011) ..................................................................... 12, 16, 18

*Campaign for Fiscal Equity, Inc. v. New York*,
655 N.E.2d 661 (N.Y. 1995)..................................................................................6

*Campaign for Fiscal Equity, Inc. v. New York*,
801 N.E.2d 326 (N.Y. 2003)................................................................................16

*Cox v. Brown*,
498 F. Supp. 823 (D.D.C. 1980) ..........................................................................15

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
689 F. Supp. 197 (S.D.N.Y. 1998)........................................................................15

*Lampkin v. District of Columbia*,
27 F.3d 605 (D.C. Cir. 1994)...............................................................................17

*Lavelle v. Quinones*,
679 F. Supp. 253 (E.D.N.Y. 1988)........................................................................19

*Li v. Certain Underwriters at Lloyd's*,
183 F. Supp. 3d 348 (E.D.N.Y. 2016)...................................................................12

*Martinez v. Cuomo*,
459 F. Supp. 3d 517 (S.D.N.Y. May 12, 2020) ....................................................15

*N.J. v. New York*,
872 F. Supp. 2d 204 (E.D.N.Y. 2011)...................................................................15

*Nat'l Law Ctr. on Homelessness & Poverty v. New York*,
224 F.R.D. 314 (E.D.N.Y. 2004) .................................................................... 17, 18

*Orozco by Arroyo v. Sobol*,
674 F. Supp. 125 (S.D.N.Y. 1984)........................................................... 7, 12, 15

*Plyler v. Doe*,
 457 U.S. 202 (1982) ..................................................................................................8, 18

*Rodriguez ex rel. Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1998) ...........................................................................................12

*Singas Famous Pizza Brands Corp. v. New York Advert. LLC*,
 468 F. App'x 43 (2d Cir. 2012) ......................................................................................12

*V.W. v. Conway*,
 236 F. Supp. 3d 554 (N.D.N.Y. 2017) ............................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
 354 F. Supp. 2d 455 (S.D.N.Y. 2005)..............................................................................12

**Statutes**

42 U.S.C. § 1983..............................................................................................................17

42 U.S.C. § 11431(1) .......................................................................................................17

42 U.S.C. § 11431(2) ...................................................................................................7, 14

McKinney-Vento Act........................................................................6, 7, 11, 14, 17, 18, 20

New York State Education Law § 3209............................................................................6, 17

**Other Authorities**

Fed. R. Civ. P. 65...............................................................................................................5

H.R. Conf. Rep. No. 100-174 .....................................................................................14, 20

New York State Constitution....................................................................................6, 11, 16, 17

Plaintiffs E.G., M.M., O.M., and Coalition for the Homeless, by their attorneys, The Legal Aid Society and Milbank LLP, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiffs M.M., E.G., and O.M. are parents of school-aged children who currently reside in New York City shelters and have been unable, since the onset of the COVID-19 pandemic, to meaningfully participate in school due to the City's failure to provide adequate internet access at the shelters where they reside.  Plaintiff E.G. lives in a family shelter in Manhattan; Plaintiff M.M. lives in a confidential domestic violence shelter in New York City; and Plaintiff O.M. lives in a family shelter in Brooklyn.  With schools currently closed for in-person learning, Plaintiffs' children are unable to attend school in person.  And none of Plaintiffs' children have been able to consistently attend school "virtually"—that is, through a computer, tablet, or other electronic device—because the shelters where they live lack reliable internet service for residents.  They accordingly seek, together with Plaintiff Coalition for the Homeless and on behalf of themselves and all others similarly situated, a preliminary injunction remedying this unlawful situation.

Both state and federal law grant and protect homeless children's right to an education.  The New York State Constitution guarantees a "sound basic education" for each child residing in the State.  *See* N.Y. Const. art. XI, § 1; *see also Campaign for Fiscal Equity, Inc. v. New York*, 655 N.E.2d 661, 665 (N.Y. 1995).  New York State Education Law ("NYSEL") § 3209 provides, among other things, that indigent children must be provided the necessary tools to attend school. N.Y.S. Educ. L. § 3209(7).  Federal law commands the same result through the McKinney-Vento Homeless Assistance Act, 42 U.S.C. §§ 11431-11435 (the "McKinney-Vento Act"), and the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1.

True, none of these laws speaks specifically in terms of internet access.  But it can hardly be disputed that such access is a basic prerequisite to school attendance under the conditions of the COVID-19 pandemic, in which the City's public schools have been operating substantially remotely and, as of the time of this filing, are now again operating entirely remotely.  Indeed, Defendants here—the City of New York, various responsible agencies, and their respective administrators—do not dispute the importance of adequate internet access.  Mayor de Blasio himself recently instructed City officials to install "WiFi" (wireless access, via routers or access points, to a building's wired internet connection) at all shelters across the City.  Thus, Plaintiffs' ability to establish a likelihood of success on the merits of their claims is clear.

There can also be no doubt that the ongoing harm of being unable to attend school is irreparable.  As set forth in more detail below, courts in this Circuit have recognized that disruption of a child's education, even when temporary, threatens irreparable injury.  *See, e.g.*, *Orozco by Arroyo v. Sobol*, 674 F. Supp. 125, 128 (S.D.N.Y. 1984) ("Interruption of a child's schooling[,] causing a hiatus not only in the student's education but also in the other social and psychological development processes that take place during the child's schooling, raises a strong possibility of irreparable injury.").  So has Congress in passing the McKinney-Vento Act, which aims to prevent the disruption to a child's education that occurs when obstacles posed by homelessness intervene.  *See, e.g.*, 42 U.S.C. § 11431(2) (guarding against "regulations, practices, or polices" that "may act as a barrier to the . . . attendance or success in school of . . . homeless children and youths").

Finally, the equities tip decidedly in favor of an injunction.  Without such relief, Plaintiffs' children and other students living in shelters will miss most, if not all, of the 2020-2021 school year, as Defendants' current plan is to complete installation of WiFi at all shelters housing students next summer at the earliest, and even that deadline assumes Defendants are able to meet what they

deem an "aggressive goal." For many homeless students, school is the rare bright spot of stability in the midst of otherwise highly unsettled circumstances. This is especially so during the COVID-19 pandemic, which has disproportionately impacted indigent Black and Hispanic/Latinx New Yorkers. By contrast, the only burden Defendants can point to is that the injunction will cause them to treat the situation with the urgency it so plainly requires.

In sum, Plaintiffs easily satisfy the standards for preliminary injunctive relief. Accordingly, Plaintiffs respectfully request that the Court issue a preliminary injunction ordering Defendants to equip all shelters housing school-aged children with reliable WiFi access as soon as is reasonably practicable, but in no event later than January 4, 2021, so that the students living in those shelters can regain access to their education.

## FACTUAL BACKGROUND

In March 2020, the COVID-19 pandemic transformed the school experience for all students from in-person learning to instruction online. (Compl. ¶¶ 33–35.) Since March, students in New York City public schools have required internet access to join class, receive assignments, complete coursework, and communicate with their classmates and teachers through an online portal. (*Id.* ¶ 34-35.) To help facilitate the transition to the virtual classroom, the New York City Department of Education ("DOE"), a Defendant here, distributed approximately 300,000 iPads to students in need. (*Id.* ¶ 36-38.) DOE also contracted with T-Mobile to provide cellular plans for these iPads so that, in theory, all students could connect to the virtual classroom regardless of their location or circumstances. (*Id.* ¶ 38.)

That theory, however, quickly collided with reality, at least for Plaintiffs and other students residing in the City's shelters. That is because the shelters where Plaintiffs reside—and countless other shelters around the City—do not provide WiFi access to their residents. (*Id.* ¶¶ 40-58.) The only way for these children currently to attend class is by connecting to the internet through cellular

3

service.  (*Id.* ¶¶ 40-41, 44, 47, 51-52.)  Yet, as anyone who uses a cell phone while commuting throughout New York City knows well, service can vary considerably depending on location, ranging from lightning fast speeds to "dead zones" in which it is impossible to access the internet at all.  Unfortunately, the shelters at which Plaintiffs reside and many others fall into the latter category.  (*Id.* ¶¶ 41-42, 47, 51-52.)  As a result, Plaintiffs and other members of the Class (as defined in paragraph 116 of the Complaint) have effectively been locked out of the classroom.

As early as the spring of 2020, Plaintiff Coalition for the Homeless (the "Coalition") informed Defendants that students in shelters were unable to attend class remotely due to a lack of reliable internet access.  (*Id.* ¶¶ 59-61; *see also* Ex. A.[1])  Throughout the summer and into the fall, the Coalition continued communicating with the City in hopes that the City would take action to ensure students living in shelters like Plaintiffs and other Class Members were able to attend school.  (Compl. ¶¶ 67-68; *see also* Exs. B & C.)  In response, Defendants acknowledged the urgency of the situation but failed to put in place a plan to address it expeditiously, despite the high probability that the 2020-2021 school year would be conducted, at least in part, remotely, and the many months Defendants had to prepare for this eventuality.  (Compl. ¶¶ 64-66.)

The Coalition was not the only party to express concerns to Defendants.  Both the New York City Bar Association and New York City Comptroller Scott Stringer wrote letters to Mayor de Blasio and other City officials raising concerns about the inability of homeless students to access WiFi for the purposes of education.  (Exs. D & E.)  Despite these expressions of concern and Defendants' awareness that the iPads provided to students often were rendered unusable by

---

[1] "Ex. _" refers to the exhibits attached to the Declaration of Grant R. Mainland in Support of Plaintiffs' Motion for Preliminary Injunction, filed contemporaneously herewith.

cellular dead zones—making WiFi essential—Defendants still neglected to provide such service in shelters.  (Compl. ¶¶ 44-45, 47-48, 53-56.)

After months of Defendants' prolonged inaction, counsel for Plaintiffs served Defendants with a letter in October demanding that WiFi be installed in the Flatlands shelter in particular and also at shelters throughout the City more generally.  (Ex. F.)  Defendants, however, continued to deny that WiFi installation was necessary, arguing that cellular-based connectivity—which had months of demonstrable failings—was sufficient.  (Ex. G.)   Only after this letter raised sufficient public and media scrutiny that Mayor de Blasio instructed City officials to install WiFi at all shelters did Defendants begin to acknowledge that students like Plaintiffs needed WiFi in order to be able to consistently and reliably access their education.  (Compl. ¶¶ 81–82.)

While Defendants have finally acknowledged the problem, their delay in resolving the lack of WiFi in shelters persists and requires the injunctive relief sought by this motion.  Following Mayor de Blasio's directive, Defendant New York City Department of Homeless Services ("DHS") communicated that it intends to complete WiFi installation at 27 "priority sites"—out of a total of 240 shelters requiring WiFi installation—at some undetermined time "this winter" (*i.e.*, potentially as late as March 20, 2021).  (Ex. H.)  As for the remaining 213 shelters, DHS stated that installation would be complete in the summer of 2021 (*i.e.*, after the 2020-2021 school year), and even then, only if it was able to meet what it characterized as an "aggressive goal."  (*Id.*)  Thus, for many students in shelters, a virtual lockout from school that began in March 2020 will not be remedied by Defendants until September 2021—a year-and-a-half later—at the earliest.  (*Id.*)

In an attempt to communicate the insufficiency of this solution, counsel for Plaintiffs served Defendants with a second letter at the end of October reiterating the need for immediate action.  (Ex. I.)  In their response, which came more than two weeks later, Defendants yet again

5

refused to provide concrete details on when shelters throughout the City could expect to have WiFi, and attempted to shift the blame for the connectivity issues onto Plaintiffs and other Class Members.  (Ex. J.)

The need to end this lockout by installing WiFi in New York City's shelters has become even more urgent given Defendant Carranza's recent announcement that the City's public schools are once again closing indefinitely and moving to a fully remote learning model, with no plan in place to resume any in-person learning.  Now, without a reliable WiFi connection, Plaintiffs' children and other members of the Class may not receive any education whatsoever.

## ARGUMENT

The children of Plaintiffs E.G., MM, and O.M., and all other members of the Class, are entitled to receive a sound basic education notwithstanding their lack of a fixed and regular nighttime residence.  That entitlement arises under multiple sources of law:  Article XI § 1 of the New York State Constitution, NYSEL § 3209, the McKinney-Vento Act, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.  Since the COVID-19 pandemic closed the physical doors to New York City schools, Plaintiffs have been denied this right.  This Court should grant a preliminary injunction that would reopen the virtual door to school for Plaintiffs and other Class members by providing reliable and consistent internet access in the City's shelters.

I.     **PLAINTIFFS AND OTHER CLASS MEMBERS ARE ENTITLED TO A PRELIMINARY INJUNCTION RESTORING THEIR ACCESS TO A SOUND BASIC EDUCATION.**

An applicant for a preliminary injunction must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir.

2011) (citation and quotation marks omitted); *Orozco v. Sobol*, 674 F. Supp. 125, 127-28 (S.D.N.Y. 1987).  Although the burden of proof is higher on a party that seeks "a mandatory preliminary injunction that alters the status quo by commanding some positive act," *Cacchillo*, 638 F.3d at 406, that heightened standard does not apply where, as here, an injunction requires a party to do only what it "'should have done earlier.'"  *Li v. Certain Underwriters at Lloyd's*, 183 F. Supp. 3d 348, 361 (E.D.N.Y. 2016) (*quoting Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)); *see also In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005).  Plaintiffs easily satisfy the standards for the preliminary injunctive relief sought herein.

**A.      Plaintiffs and Other Class Members Will Suffer Irreparable Harm Without an Injunction.**

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1998).  Irreparable harm is established where, absent a preliminary injunction, the plaintiff "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Singas Famous Pizza Brands Corp. v. New York Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012).

Here, the harm caused by Defendants' long-running failure to provide WiFi access to Plaintiffs and other school-aged residents of the City's shelters is plainly irreparable because it has caused, and is continuing to cause, a significant disruption in Plaintiffs' and other Class members' education.  That disruption is not a mere inconvenience, but a significant setback in Plaintiffs' and other Class members' learning.  The academic literature shows that even a *2-month cessation* in learning during summer break can result in a meaningful regression in a child's core competencies as compared to the end of the preceding school year, and that low-income Black and Hispanic/Latinx students fare worse than higher income peers.  *See* David M. Quinn & Morgan

Polikoff, *Summer learning loss: What is it and what can we do about it?* The Brookings Institution (Sept. 14, 2017), available at www.brookings.edu/research/summer-learning-loss-what-is-it-and-what-can-we-do-about-it/.[2]  Here, Class members face the prospect of as much as an ***18-month cessation***, extending from the closure of schools in March 2020 to the beginning of the school year in September 2021, when WiFi installation will finally be complete according to DHS's purportedly "aggressive goal."  Indeed, even the small percentage of shelters (11.25%) that DHS has designated as "priority sites" may not have functional WiFi until March 2021, such that children in the shelters with the biggest connectivity problems will likely face a ***1-year cessation***. This lost time is unrecoverable.  At best, it may require repeating a year of school for many of these children, delaying their pursuit of higher education and/or entry into the workforce.

The harm is not only educational in nature, but also psychological.  For children living in shelters, school serves as a rare source of stability in otherwise unstable lives and personal circumstances.  For many children in the dire circumstances of homelessness, public schools provide a support system whose benefits cannot be calculated, ranging from teachers and administrators tracking students' academic and developmental progress, extracurricular sports and enrichment activities, active friendships with classmates, and more.  By denying Plaintiffs and other Class members the WiFi access that is necessary to enter the virtual classroom, Defendants are denying them these critical physical, developmental, and emotional benefits that go well beyond the essentials of literacy and math.

The irreparable nature of the harm suffered by children when their education is disrupted or impeded has been recognized by Congress, the U.S. Supreme Court, and the courts of this

---

[2] The City's Fiscal Year 2020 Mayor's Management Report cites an 85% attendance rate for school-age children who live in the DHS-run shelters, placing them at an additional disadvantage even pre-pandemic.  *See* Mayor's Management Report, Fiscal 2020, The City of New York (dated Sept. 2020), available at www1.nyc.gov/assets/operations/downloads/pdf/mmr2020/2020_mmr.pdf.

Circuit and District.  Indeed, the McKinney-Vento Act was passed precisely because Congress

appreciated the irreparable nature of the harm that homelessness can cause children if it is allowed

to function as an impediment to their education.  In passing the McKinney-Vento Act, Congress

specifically observed that disruptions to a homeless student's education have injurious effects on

the development of homeless children.  *See, e.g.*, H.R. Conf. Rep. No. 100-174, at 69 (1987).

Congress also recognized that interference with homeless students' education can impede them

from achieving the educational success necessary to break the cycle of homelessness.  *Id*.  This is

the reason that the McKinney-Vento Act mandates that State and local agencies "review and

undertake steps to revise" any "regulations, practices, or policies" that "may act as a barrier to the

. . . attendance or success in school of . . . homeless children and youths."  42 U.S.C. § 11431(2).

The United States Supreme Court has also observed:

> Today, education is perhaps the most important function of
> state and local governments.  Compulsory school attendance
> laws and the great expenditures for education both
> demonstrate our recognition of the importance of education
> to our democratic society.  It is required in the performance
> of our most basic public responsibilities, even service in the
> armed forces.  It is the very foundation of good citizenship.
> Today it is a principal instrument in awakening the child to
> cultural values, in preparing him for later professional
> training, and in helping him to adjust normally to his
> environment.  In these days, it is doubtful that any child may
> reasonably be expected to succeed in life if he is denied the
> opportunity of an education.  Such an opportunity, where the
> state has undertaken to provide it, is a right which must be
> made available to all on equal terms.

*Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954); *see also Cox v. Brown*, 498 F. Supp. 823, 828-

29 (D.D.C. 1980) ("[A]bsent injunctive relief, [plaintiffs] will suffer the irreparable harm of

lacking each day of their young lives an appropriate education . . . .").

The courts of this Circuit likewise have recognized that even a brief disruption of a child's

education can have grave effects.  "Interruption of a child's schooling[,] causing a hiatus not only

in the student's education but also in the other social and psychological development processes that take place during the child's schooling, raises a strong possibility of irreparable injury." *Orozco by Arroyo* 674 F. Supp. at 128; *see also Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 204 (S.D.N.Y. 1998) (disruption in schooling constitutes irreparable harm because of the accompanying loss of education, vocational, and social development); *N.J. v. New York*, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011) ("Interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury.") (quoting *Ross v. Disare*, 500 F.Supp. 928, 934 (S.D.N.Y.1977)); *V.W. v. Conway*, 236 F. Supp. 3d 554, 588-89 (N.D.N.Y. 2017) ("[D]eprivation of education services by . . . defendants hinder[ed] important aspects of [plaintiffs'] adolescent development.").  Thus, children such as Plaintiffs who reside in shelters, and who lack the stable home environment that many other students enjoy, have a particular need for continuity in their education.  This need cannot wait until the end of a trial to resolve disputes over the merits; at that point, it will plainly be too late to avoid the harm that could be stopped, or at least mitigated, through immediate injunctive relief.  *Cf. Martinez v. Cuomo*, 459 F. Supp. 3d 517, 526 (S.D.N.Y. May 12, 2020) (concluding irreparable harm to Deaf plaintiffs where plaintiffs were denied of "timely access to critical information").

**B.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

As an initial matter, Plaintiffs need not show likelihood of success on the merits to be afforded injunctive relief; rather, because the balance of hardships so plainly tips in Plaintiffs' favor, as set forth in Point I.C *infra*, Plaintiffs need only show "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Cacchillo*, 638 F.3d at 406.  But even if the Court were not to resolve the balance of equities in Plaintiffs' favor, Plaintiffs are nonetheless likely to succeed on the merits of their claims.

10

Defendants' conduct in this case is not merely an arguable or technical violation of law; it is a wholesale abdication of their legal obligations under federal and state constitutional and statutory regimes, many of which are specifically intended to protect homeless students such as Plaintiffs from this sort of neglect.  Indeed, by conceding that WiFi should be installed in all shelters across the City, Mayor de Blasio himself apparently recognized that the status quo does not comport with the City's legal obligations.  Nor have Defendants argued otherwise in response to correspondence from Plaintiffs' counsel, focusing entirely on the proposed remedy rather than what they implicitly recognize to be unlawful.  This is understandable, as at least four different legal violations are clear.

First, Article XI § 1 of the New York Constitution, as interpreted by the New York Court of Appeals, requires the New York State and its instrumentalities to provide a "sound basic education" to all students within the state.  *Bd. of Educ. v. Nyquist*, 439 N.E.2d 359, 369 (N.Y. 1982).  This means that all students in New York City, including homeless students, must be given "the opportunity for a meaningful high school education . . . [that] prepares them to function productively as civic participants."  *Campaign for Fiscal Equity, Inc. v. New York*, 801 N.E.2d 326, 332 (N.Y. 2003).  Here, the issue is not the ***soundness*** of the education New York City is providing to Plaintiffs and other Class members, but the fact that ***it is not providing them with any education at all***.  Defendants' failure to provide students living in shelters with the WiFi necessary to access their virtual classrooms thus directly contravenes the New York Constitution.

Second, Defendants have violated their duties under New York State Education Law § 3209.  Under § 3209(6)(b), officials must review and revise any policies or practices "that may act as barriers to the enrollment or attendance of homeless children."  Officials must also provide homeless children with "necessaries to enable them to attend" school.  § 3209(7).  Defendants'

inexcusable delay in installing WiFi in shelters is a clear barrier to homeless students' ability to attend school. Absent injunctive relief, that barrier threatens to persist for as long as 18 months from the March 2020 onset of the COVID-19 pandemic, in violation of New York State Education Law § 3209.

Third, the McKinney-Vento Act protects Plaintiffs' and other Class members' rights to have access to, and succeed in, "the same free, appropriate public education . . . as provided to other children and youths." 42 U.S.C. § 11431(1). The Act also requires local educational agencies to review and revise any policies that "may act as a barrier to the . . . attendance or success in school of . . . homeless children and youths." *Id.* § 11431(2). The McKinney-Vento Act confers enforceable rights upon its beneficiaries, who may sue to enforce these rights under 42 U.S.C. § 1983. *See Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 319 (E.D.N.Y. 2004); *Lampkin v. District of Columbia*, 27 F.3d 605, 612 (D.C. Cir. 1994). Defendants' failure to provide WiFi in shelters has prevented Plaintiffs and other Class members from receiving their guaranteed free and appropriate education. For eight months, Defendants delayed installing WiFi in shelters notwithstanding the numerous complaints they received from students in shelters who were unable to connect to the virtual classroom. For eight months, while other students enjoyed the opportunity to connect and participate with their instructors, submit assignments, and receive feedback, students in shelters were denied the same opportunity as a direct result of Defendants' actions. And although Defendants now admit the need to install WiFi in shelters throughout the City, they are content to do so on a timeline that will involve a continuing and profound disruption to Class members' education in the meantime—a burden borne uniquely by children living in shelters. This conduct runs afoul of the McKinney-Vento Act.

Finally, the Fourteenth Amendment to the U.S. Constitution requires states to provide to all people within their jurisdiction "the equal protection of the laws."  U.S. Const. amend. IV, § 1. The Equal Protection Clause has been held to apply to state policies or practices that interfere with homeless students' access to public school education, and such policies and practices are subject to a heightened standard of review.  *E.g.*, *Nat'l Law Ctr. on Homelessness & Poverty* 224 F.R.D. at 321-22; *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982).   Under that heightened standard, Defendants have failed to provide Plaintiffs and other Class members with the equal protection of the laws by imposing upon them, through their policies and practices, impediments to educational access that children outside of shelters generally do not face.

Plaintiffs' allegations plainly show sufficiently serious questions going to the merits of these constitutional and statutory claims to make them a fair ground for litigation, which is all Plaintiffs must show given that the balance of hardships weigh in favor of Plaintiffs, as set forth in the next section.  Even if the Court were to balance the hardships differently, however, Plaintiffs are likely to succeed on the merits; indeed, Defendants do not appear to dispute them.

## C.        The Balance of Hardships Weighs in Favor of Plaintiffs.

Given Plaintiffs' likelihood of success on the merits, Plaintiffs need not show that that the balance of hardships weighs in their favor.  *See Cacchillo*, 638 F.3d at 406 (movant showing irreparable harm and likelihood of success on the merits is entitled to preliminary injunctive relief without need for balance of hardships analysis).  But even if that were not the case, the balance of hardships analysis is not a difficult one here.

Should the Court decline to issue an injunction, Plaintiffs' children would miss a significant amount of school, fall further behind in their studies, and miss opportunities to develop intellectually and socially.  Each additional day that Plaintiffs are denied access to their education disrupts their development and puts them at greater risk of low educational achievement.  During

a global pandemic that has upturned their lives, Plaintiffs' children should not have to endure the additional stress of being unable to get online to attend school each day due to Defendants' unwillingness to remedy the issue in a timely manner.

By contrast, any burden on Defendants is minimal.  The only "harm" to Defendants would be the cost and effort of providing WiFi in the City's shelters—something they are already constitutionally and statutorily obligated to do under the conditions of the pandemic.  Many shelters that already have some form of WiFi installed have made it only accessible to the staff operating those shelters.  Consequently, providing students in these shelters with access to WiFi would require no more than expansion of this network, which should be a quick and relatively low-cost undertaking in the context of New York City's annual budget.  In setting forth their patently indefensible timeline for City-wide WiFi installation at shelters, Defendants have at no time articulated why installation would take so long.

Public policy also strongly favors the issuance of an injunction.  Fair administration of public schools in a manner that does not discriminate against or disadvantage homeless children is an important public goal.  *See Lavelle v. Quinones,* 679 F. Supp. 253, 259 (E.D.N.Y. 1988) ("[M]aintenance of public confidence in the integrity of the administration of the schools is of concern to the entire city.").  Defendant DOE has pledged its commitment to "providing every single child, in every classroom, in every New York City public school, with a rigorous, inspiring, and nurturing learning experience." *See Equity and Excellence for All,* N.Y.C DEPARTMENT OF EDUCATION, available at https://www.schools.nyc.gov/about-us/vision-and-mission/equity-and-excellence.  As DOE has emphasized, "[t]hat is true ***regardless of family income***, race, nationality, disability, language spoken at home, sexual orientation, or gender identification." *Id.* (emphasis

added).  The injunctive relief sought herein would hold not "harm" DOE, but rather hold it to its own commitments.

Finally, homelessness is a societal problem, and the public interest is served by breaking the cycle of poverty that leads to homelessness.  As Congress has acknowledged, education plays a key role in breaking this cycle.  *See, e.g.*, H.R. Conf. Rep. No. 100-174, at 69 (1987).  If an injunction is issued, and Plaintiffs and other Class members are given a fair opportunity for educational achievement, New York City's interest in assisting its most vulnerable and defenseless citizens will be advanced.  The incremental cost of providing this opportunity to Plaintiffs and other Class members—a cost that Congress has subsidized through grants under the McKinney-Vento Act—pales in comparison.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a preliminary injunction in their and other Class members' favor.

Dated: November 23, 2020
       New York, New York

                                        THE LEGAL AID SOCIETY

                                        /s/ Susan J. Horwitz

                                        Susan J. Horwitz
                                        Janet Sabel
                                        Adriene Holder
                                        Judith Goldiner
                                        Joshua Goldfein
                                        Beth Hofmeister
                                        Kathryn Kliff
                                        199 Water Street
                                        New York, NY 10038
                                        Telephone: (212) 577-3300
                                        SHorwitz@legal-aid.org

15

**MILBANK LLP**

/s/ Grant R. Mainland

Grant R. Mainland
Maria Esperanza Ortiz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5251
GMainland@milbank.com


*Attorneys for Plaintiffs*

16