**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

E.G., individually and as parent and natural
guardian of A.I. and L.I., minor children;
M.M., individually and as parent and natural
guardian of E.H., L.H., Ev.P., and E.P.,
minor children; O.M., individually and as
parent and natural guardian of A.M., a minor     CIVIL ACTION NO. 1:20-cv-9879 (AJN)
child; and COALITION FOR THE
HOMELESS, on behalf of themselves and
all others similarly situated,
    Plaintiffs,

    v.

THE CITY OF NEW YORK; NEW YORK
CITY DEPARTMENT OF EDUCATION;
RICHARD A. CARRANZA, as Chancellor of
the New York City Department of Education;
NEW YORK CITY DEPARTMENT OF
SOCIAL SERVICES; STEVEN BANKS, as
Commissioner of the New York City
Department of Social Services; NEW YORK
CITY DEPARTMENT OF HOMELESS
SERVICES; JOSLYN CARTER, as
Administrator of the New York City
Department of Homeless Services; NEW
YORK CITY HUMAN RESOURCES
ADMINISTRATION; GARY JENKINS as
Administrator of the New York City Human
Resources Administration; NEW YORK CITY
DEPARTMENT OF INFORMATION
TECHNOLOGY AND
TELECOMMUNICATIONS; and JESSICA
TISCH, as Commissioner of the New York City
Department of Information Technology and
Telecommunications,,

    Defendants.

**DECLARATION OF NICOLE DONIGER STROM IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Nicole Doniger Strom, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am Chief of Staff at the New York City Human Resources Administration ("HRA"), which is an administrative unit of the Department of Social Services ("DSS"). My responsibilities include leading the strategic planning, development and management of discrete projects and complex initiatives concerning the programmatic and broad policy issues impacting HRA. One such project includes working with DOE to provide information about families/students with ipad-related problems and coordinating with DoITT for shelter access for the City's WiFi installation plan. I submit this Declaration in support of the defendants' opposition to plaintiffs' motion for a preliminary injunction. I am familiar with the matters set forth herein, based on my personal knowledge, experience and observations, conversations with HRA staff, and review of documents.

2. I understand that Erica Dean of the New York City Department of Homeless Services is submitting a declaration in this matter ("Dean Declaration"). This declaration provides additional information that is specific to shelters operated by HRA.

3. HRA operates shelters at 41 locations to provide housing for families that are survivors

of domestic violence. Additionally, HRA also houses families that are survivors of domestic violence are placed in units that are scattered across the City. These shelters and dwelling units serve approximately 1,000 families and 1,000 children.

4. After Mayor de Blasio announced on March 15, 2020, that New York City's vast system of over 1,800 public schools would close as a result of the Covid-19 pandemic, HRA coordinated with the New York City Department of Education ("DOE") and the New York City Department of Information Technology and Telecommunications ("DoITT") to ensure that all students at HRA domestic violence shelters received an ipad enabled with T-Mobile.

5. While I understand that after New York City schools reopened in the middle of September, DHS began to hear reports that students at certain DHS shelters were having difficulty utilizing the DOE ipads they had received in the Spring, the volume of these sorts of reported issues at HRA shelters was lower. All HRA shelters that have DOE students have a DOE liaison assigned to their facility, known as a Family Assistant, who provides educational assistance to DOE students residing at the shelter. During the COVID-19 pandemic, most Family Assistants are working remotely, but have been available to assist students with navigating technology needs for remote learning.

6. In October, when DOE established an IT phone helpdesk, originally available from 6 am to 5 pm and later extended to 9 pm, dedicated solely to responding to technological questions and problems experienced by students residing in shelters, HRA worked with DOE to notify families residing at all shelters about the helpdesk and the hours families could call for assistance, including by distributing flyers under residents doors and posting notices at the shelters regarding the availability of the dedicated helpdesk.

7. HRA also conducted the survey described in the Dean Declaration with all families with school-aged children residing at HRA shelters and dwelling sites. Approximately 245 families reported some form of a problem with their DOE-issued iPad or iPads. Some, but not all, of the problems reported by the families involved the inability to connect to the internet.

8. To date, HRA has provided DOE with information collected through the survey from approximately 238 families residing at HRA shelters that reported some form of a problem with their DOE-issued ipad or ipads and consented to DOE contacting them. We are still receiving survey responses and consent forms and may have additional reports to forward to DOE.

9. When DOE has been unable to resolve an issue by phone, DOE has been sending technicians onsite to HRA shelters to contact each of these families in an effort to resolve these issues. HRA staff and HRA contracted shelter staff assist the technicians in contacting the families that have reported an issue, coordinating with families that cannot be available while the technician is on-site, and contacting other families to determine if they are having a problem that the technician can address while on-site.

10. There are 41 HRA shelters on DoITT's list for WiFi installation that is described in more detail in the Dean Declaration. Of these sites, 27 are shelters in which residents already have Wifi access. These shelters generally have wiring that extends through the hallways of the building, and they are included on DoITT's list of shelters because they will be extending the wiring in these locations into each unit.

11. The dwelling units that are described in paragraph 3 are not slated for WiFi installation. These units are scattered across the City and families can only stay in these units for 180 days. In addition, the providers that rent these units may attain different locations as a result of rent increases or for confidentiality reasons. To the extent families in these locations report difficulty connecting to the internet they will receive a Verizon-enabled ipad and support from a DOE technician.

12. HRA's records reflect that one of the named plaintiffs, M.M., resides at an HRA domestic violence shelter which has internet pods/extenders in the ceilings on every floor that extends the WiFi to every room. The provider that runs the shelter reports that all residents can access the WiFi from their unit and that on Nov. 2, 2020, the Plaintiff filled out a survey that indicated the family had four devices for the children and did not report any issues with them. The provider was able to identify the plaintiff based on the room number reported at the shelter.

DATED this 4th day of December 2020 at New York, New York.

Nicole Doniger Strom

2