UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
E.G., individually and as parent and natural
guardian of A.I. and L.I., minor children;
M.M., individually and as parent and natural
guardian of E.H., L.H., E.P., and E.P.,
minor children; O.M., individually and as
parent and natural guardian of A.M., a minor
child; and COALITION FOR THE
HOMELESS, on behalf of themselves and
all others similarly situated,

            Plaintiffs,

   -against-

THE CITY OF NEW YORK; NEW YORK
CITY DEPARTMENT OF EDUCATION;
RICHARD A. CARRANZA, as Chancellor of
the New York City Department of Education;
NEW YORK CITY DEPARTMENT OF
SOCIAL SERVICES; STEVEN BANKS, as
Commissioner of the New York City
Department of Social Services; NEW YORK
CITY DEPARTMENT OF HOMELESS
SERVICES; JOSLYN CARTER, as
Administrator of the New York City
Department of Homeless Services; NEW
YORK CITY HUMAN RESOURCES
ADMINISTRATION; GARY JENKINS as
Administrator of the New York City Human
Resources Administration; NEW YORK CITY
DEPARTMENT OF INFORMATION
TECHNOLOGY AND
TELECOMMUNICATIONS; and JESSICA
TISCH, as Commissioner of the New York
City Department of Information Technology
and Telecommunications,

            Defendants.
------------------------------------------------------x

No. 20-cv-9879 (AJN)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 3

I.      PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM. ..................................... 3

II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ..................................... 4

         A.      Plaintiffs Are Likely to Succeed on the Merits of Their Education Article Claim. .................................................................................................................. 5

         B.      Plaintiffs Are Likely to Succeed on the Merits of Their McKinney-Vento Act and NYSEL § 3209 Claims. ............................................................................... 7

         C.      Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Clause Claim. ....................................................................................................... 9

CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aristy-Farer v. State*,
    81 N.E.3d 360 (N.Y. 2017) ......................................................................................................6

*Bd. of Educ. v. Nyquist*,
    439 N.E.2d 359 (N.Y. 1982) ....................................................................................................5

*Buck v. State*,
    198 Misc. 575 (N.Y. Ct. Cl. 1950) ...........................................................................................6

*Bullock v. Bd. of Educ.*,
    210 F.R.D. 556 (D. Md. 2002) .................................................................................................8

*Campaign for Fiscal Equity, Inc. v. State*,
    801 N.E.2d 326 (N.Y. 2003) .............................................................................................5, 6, 7

*Chao v. Ladies Apparel Group, Ltd.*,
    2002 WL 1217194 (S.D.N.Y. 2002) ........................................................................................9

*L.R. ex rel. G.R. v. Steelton-Highspire Sch. Dist.*,
    2010 WL 1433146 (M.D. Pa. Apr. 7, 2010) ............................................................................8

*G.S. v. Rose Tree Media Sch. Dist.*,
    914 F.3d 206 (3d Cir. 2018) .....................................................................................................8

*Joel v. City of Orlando*,
    232 F.3d 1353 (11th Cir. 2000) ..............................................................................................10

*Kadrmas v. Dickinson Pub. Schs.*,
    487 U.S. 450 (1988) .......................................................................................................2, 3, 10

*Lalli v. Lalli*,
    439 U.S. 259 (1978) ...............................................................................................................10

*Lampkin v. District of Columbia*,
    879 F. Supp. 116 (D.D.C. 1995) ..............................................................................................8

*Lewis v. Thompson*,
    252 F.3d 567 (2d Cir. 2001) .................................................................................................3, 9

*Li v. Certain Underwriters at Lloyd's*,
    183 F. Supp. 3d 348 (E.D.N.Y. 2016) .....................................................................................4

*N.J. v. New York*,
    872 F. Supp. 2d 204 (E.D.N.Y. 2011) ...................................................................................8

*Nat'l Law Ctr. on Homelessness & Poverty v. New York*,
    224 F.R.D. 314 (E.D.N.Y. 2004) ................................................................................ *passim*

*Ocean Hill-Brownsville Governing Bd. v. Bd. of Educ.*,
    245 N.E.2d 219 (N.Y. 1969) ...................................................................................................5

*Paynter v. State of New York*,
    797 N.E.2d 1225 (N.Y. 2003) .................................................................................................6

*Pelham Council of Governing Bds. v. City of Mt. Vernon*,
    186 Misc. 2d 301 (Sup. Ct. Westchester Cty. 2000) ...............................................................5

*Plyler v. Doe*,
    457 U.S. 202 (1982) ..................................................................................................2, 3, 9, 10

*S.C. v. Riverview Gardens Sch. Dist.*,
    2019 WL 922248 (W.D. Mo. Feb 25, 2019) ...........................................................................8

*Wiltwyck Sch. for Boys, Inc. v. Hill*,
    182 N.E.2d 268 (N.Y. 1962) ...................................................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
    354 F. Supp. 2d 455 (S.D.N.Y. 2005) .....................................................................................4

*N.Y. Civ. Liberties Union v. New York*,
    824 N.E.2d 947 (N.Y. 2005) ...................................................................................................6

**Statutes**

42 U.S.C. § 11431 ...............................................................................................................2, 4, 7

42 U.S.C. § 11432 ........................................................................................................................8

N.Y.S. Educ. L. § 3209 .............................................................................................................2, 7

McKinney-Vento Act ...........................................................................................................2, 7, 8

**Other Authorities**

N.Y.S. Const. ....................................................................................................................1, 2, 5, 6

U.S. Const. art. XIV .............................................................................................................1, 9, 10

**INTRODUCTION**

The PI Motion[1] established that children residing in New York City's shelters have been, and continue to be, irreparably harmed by Defendants' failure to provide reliable access to the virtual classroom. This injury flows from Defendants' failure to guarantee a "sound basic education" as required by the New York State Constitution; their tolerance of barriers to homeless children's education that the McKinney-Vento Act and New York State Education Law ("NYSEL") act to prevent; and their adoption of policies and practices that effectively discriminate against children in shelters, in violation of the Equal Protection Clause of the U.S. Constitution. As for the equities, the balancing clearly tips in favor of the City's most vulnerable children.

In response, Defendants have apparently abandoned their recent position that there are no factual disputes warranting discovery, offering instead a factual counter-narrative—told through the declarations of five City officials—designed to showcase their efforts to protect homeless children's educational access during the pandemic. But Defendants' story only underscores the severity of the problem, confirming that nearly **3,000** families have reported connectivity issues in shelters. Defendants' narrative also raises far more questions than it answers. Defendants allude to as many as 157 site surveys, without including any evidence relating to the surveys themselves; they claim to be focusing on key "priority sites" based on information collected from students in shelters, again without including the underlying information; and they even refer to a survey purportedly completed by Plaintiff M.M., here too without including the survey response itself. Ultimately, Defendants' "evidence" reduces to pure *ipse dixit*, highlighting the need for discovery in advance of the evidentiary hearing on the PI Motion.

---

[1] All capitalized terms not otherwise defined herein are as defined in the Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 14, the "PI Motion" or "PI Mot.").

As for Defendants' legal challenges to Plaintiffs' claims, each is without merit and none justifies short-circuiting the discovery process.

***First***, the Education Article of the New York State Constitution clearly applies to New York City—a creation of the New York State Legislature that, like all municipalities, acts as an agent of the State and is subject to the same constitutional guardrails. To hold otherwise would mean that the City—in charge of the single largest public-school system in the United States—provides that education solely as a matter of grace and not of constitutional obligation. Unsurprisingly, Defendants cite no case adopting such an extreme position.

***Second***, the McKinney-Vento Act and NYSEL also apply. Defendants complain that there is no precedent interpreting these statutes to require WiFi in shelters. Of course not: the pandemic and the shift to internet-based education are without precedent. These statutes nonetheless require Local Education Agencies ("LEAs") to ensure that "homeless youth ha[ve] equal access to the same free, appropriate public education" as other children, 42 U.S.C. § 11431, and provide them with "necessaries to enable them to attend" school, N.Y.S. Educ. L. § 3209(7). Defendants' effort to distinguish the internet access issue from specific statutory mandates, such as transportation to school, only proves Plaintiffs' point. The reason transportation concerned Congress was that it is a prerequisite to *access* to education itself. The same is true of internet access for students who can only attend school remotely via an electronic device: the internet is their virtual school bus.

***Third***, Defendants' claim that their differential treatment of the City's homeless children need only satisfy rational basis review is belied by the Supreme Court's ruling in *Plyler v. Doe*, 457 U.S. 202 (1982). As that case holds, denial of educational benefits must be justified by some substantial state goal. No such goal exists here. That the Supreme Court has in one case declined to extend *Plyler* to a different issue (user fees for bus transportation), *see Kadrmas v. Dickinson*

*Pub. Schs.*, 487 U.S. 450 (1988), is of no moment, as the Supreme Court in the same decision noted that the *Plyler* rationale might apply in other circumstances. *Id.* at 459-60. And in fact, the Second Circuit has applied the *Plyler* rationale elsewhere, *Lewis v. Thompson*, 252 F.3d 567, 591 (2d Cir. 2001), and other courts within this Circuit have applied it to "significantly similar" circumstances, *see Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 322 (E.D.N.Y. 2004) (applying *Plyler*'s heightened scrutiny standard to "[t]he Plaintiffs' conten[tion] that homeless children in Suffolk County are not receiving the same access to public school education enjoyed by other children").

## ARGUMENT

**I.    PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM.**

Defendants concede that irreparable harm is the "single most important" prerequisite for a preliminary injunction. (Opp. 22.) But Defendants offer only a half-hearted argument that Plaintiffs have not made the requisite showing, asserting principally that the harm suffered is the pandemic's fault, not Defendants'. (*Id.* ("[A]ny educational harm . . . is not caused by Defendants").) This effort to disclaim responsibility ignores Plaintiffs' showing that Defendants were on notice of significant issues regarding internet connectivity in shelters as early as the spring of 2020—a fact that Defendants studiously omit by suggesting that these issues did not come to Defendants' attention until September 2020. (Opp. 5.) Defendants cannot defeat the PI Motion through an untested—and demonstrably incorrect—recitation of the facts.

Defendants also suggest that Plaintiffs have not been irreparably harmed because the iPads distributed in the spring of 2020 and changes in cellular service providers have been sufficient to remedy the issue. Defendants even go so far as to assert that, to the extent Plaintiffs or members of the proposed Class continue to have difficulty accessing the virtual classroom, they can simply attend certain "Learning Bridges" locations (a solution that utterly ignores Plaintiffs' and other

3

Class members' health concerns about in-person attendance during the pandemic). (Opp. 23.) Or, worse yet, they claim that students in shelters should be content to work through "paper instructional packets" while non-homeless students actively engage with their teachers and classmates in school—a "solution" that guarantees a second-class education, not the "same free, appropriate public education . . . as provided to other children and youths." 42 U.S.C. § 11431(1).[2]

As Plaintiffs have explained in the PI Motion and will demonstrate at an evidentiary hearing, Defendants' suggested remedies are severely deficient. Absent an injunction, Defendants will only continue to delay and prevaricate, as they have done for months, while students in shelters miss an entire year's worth of schooling and are irreversibly damaged.[3] The PI Motion cannot be rendered moot by the Defendants' posturing and promises of future compliance.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs have met their burden to show that they are likely to succeed on the merits of their claims. Defendants' claim that a "heightened substantial likelihood standard" applies is wrong,[4] but regardless of which standard applies, none of the legal arguments advanced in Defendants' opposition justifies denial of the PI Motion or short-circuiting of discovery.

---

[2] Additionally, Defendants' argument fails to address precedent in this Circuit noting that the harm caused by even a temporary disruption to Plaintiffs' education is irreparable. (PI Mot. 9-10.)

[3] The detrimental effect that the shift to remote schooling has had on students of color and those in high-poverty communities has been extensively studied. A recent study released by McKinsey & Co. estimates that the shift to remote schooling has already set back students of color (who represent the vast majority of homeless students in New York City) by three to five months in their schooling, largely because Black and Hispanic students are far less likely than White students to have access to computers and internet. *See* Laura Meckler & Hannah Natanson, *'A Lost Generation': Surge of Research Reveals Students Sliding Backward, Most Vulnerable Worst Affected*, WASHINGTON POST (Dec. 6, 2020, 7:11 PM), https://www.washingtonpost.com/education/students-falling-behind/2020/12/06/88d7157a-3665-11eb-8d38-6aea1adb3839_story.html (discussing McKinsey study).

[4] Defendants contend that Plaintiffs must "make a clear or substantial showing of a likelihood of success on the merits" because they seek a mandatory positive injunction that would alter the status quo. (Opp. 13.) As explained in the PI Motion (at 7), however, this heightened standard does not apply where, as here, an injunction requires a party to do only what it "'should have done earlier.'" *Li v. Certain Underwriters at Lloyd's*, 183 F. Supp. 3d 348, 361 (E.D.N.Y. 2016) (*quoting Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988)); *see also In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005). Defendants claim these cases are "inapposite" because the relief requested was

## A. Plaintiffs Are Likely to Succeed on the Merits of Their Education Article Claim.

The Education Article of the New York State Constitution, as interpreted by the New York Court of Appeals, requires the State to provide a "sound basic education" to all students within the State. *See Bd. of Educ. v. Nyquist*, 439 N.E.2d 359, 369 (N.Y. 1982); *Campaign for Fiscal Equity, Inc. v. State*, 801 N.E.2d 326, 332 (N.Y. 2003). Defendants have denied Plaintiffs and other members of the Class that basic right. Defendants' efforts to evade responsibility are meritless.

*First*, Defendants contend that the Education Article runs against the State, not the City. (Opp. 15.) But Defendants have not cited, nor have Plaintiffs identified, a single case in which an Education Article claim was dismissed on these grounds. The City is a municipal entity—a creature of statute and an agent of the State—bound by the New York State Constitution pursuant to which it was created. *See, e.g.*, *Pelham Council of Governing Bds. v. City of Mt. Vernon*, 186 Misc. 2d 301, 306 (Sup. Ct. Westchester Cty. 2000). And the City has been vested with the authority (through the State legislature) to oversee New York City public schools. *See, e.g.*, *Ocean Hill-Brownsville Governing Bd. v. Bd. of Educ.*, 245 N.E.2d 219, 221 (N.Y. 1969) ("[T]he control of educational affairs in this State derives from the State Board of Regents through the State Commissioner to the city Board of Education. The seat of control and responsibility lies in these . . ."); *Wiltwyck Sch. for Boys, Inc. v. Hill*, 182 N.E.2d 268, 272 (N.Y. 1962) ("Our State Constitution mandates that the 'legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated' . . . The Legislature has imposed this duty in cities upon local boards of education.") (internal citations

---

purportedly less burdensome. (Opp. 14 n.4.) But Defendants offer no authority for the proposition that difficulty complying with the relief requested has any bearing on the standard governing the "likelihood of success" analysis. In any event, any such difficulty here is entirely of Defendants' own making; as the PI Motion and Plaintiffs' evidentiary presentation will show, Defendants were on notice of problems with reliable internet access in shelters in the spring of 2020, but did little to remedy the issue until November.

omitted). It would defy logic and basic agency principles if the City could freely violate the New York State Constitution without repercussion. *See, e.g.*, *Buck v. State*, 198 Misc. 575, 580 (N.Y. Ct. Cl. 1950) (where a state delegates a duty to an entity that "accepted the trust" of the state, the entity "undertook to perform with fidelity the duties which the law imposed upon it. It is not immune from suit. The state has not created an irresponsible instrumentality of government.").[5]

*Second*, citing two New York state cases, Defendants argue that Plaintiffs have not alleged "insufficient State resources." (Opp. 15.) But the cited cases do not stand for the proposition that allegations of insufficient resources or funding are a *sine qua non* of an Education Article claim. *See Aristy-Farer v. State*, 81 N.E.3d 360, 376 (N.Y. 2017) (noting that the existing jurisprudence does not "delineate the contours of all possible Education Article claims"); *Paynter v. State*, 797 N.E.2d 1225, 1229 (N.Y. 2003) (same). Nor would it make sense to impose such a requirement where, as here, the plaintiff's allegation is not inadequate resources at school, but lack of access to school altogether. In any event, an insufficient allocation of resources is certainly a component of Plaintiffs' allegations: as the Complaint and PI Motion clearly allege, Defendants have been aware of significant issues with reliable internet access in shelters since the spring of 2020, but have failed to devote sufficient resources to remedy the issue.[6]

---

[5] Defendants cite to *Campaign for Fiscal Equity,* 801 N.E.2d at 332, and *N.Y. Civ. Liberties Union v. State*, 824 N.E.2d 947, 949 (N.Y. 2005), to support their argument. While those cases acknowledge that the State can be held accountable for failing to meet its obligations under the Education Article, neither contains any language prohibiting Education Article claims from being brought against the City in its capacity as a municipal actor. In fact, in *New York Civil Liberties Union*, the court explained that education is ultimately a responsibility of school districts, reasserting "the principles of local control" over education. 824 N.E.2d at 952.

[6] This case is far different from the *Paynter* decision relied upon by Defendants. (Opp. 16.) There, the court found that the plaintiffs had not alleged a causal connection between students' low test scores and graduation rates, on one hand, and deficiencies in facilities, instrumentalities of learning, or funding, on the other. *Paynter*, 797 N.E.2d 1228-29. Here, by contrast, Plaintiffs have alleged a direct causal connection between Defendants' insufficient attention to issues with reliable internet access in shelters and students' ability to access school.

6

*Third*, Defendants argue that Plaintiffs have failed to plead "district-wide deficiencies." (Opp. 16.) But Plaintiffs' claims are not limited to any "particular teachers, or buildings, or programs" as Defendants suggest. (*Id.* (citing *Aristy-Farer*, 81 N.E.3d at 366).) Rather, Plaintiffs have pled a ***systemic failure*** of the City's educational system and its obligations to all children regardless of their living circumstances. Indeed, even Defendants' self-serving recitation of the facts acknowledges that nearly ***3,000 families***, or approximately ***30%*** of the families served by DHS alone, have reported connectivity problems in the shelters where they live. This is not a localized issue. *See Campaign for Fiscal Equity*, 801 N.E.2d 326 at 336 (noting defendants' systemic failure where thousands of students were placed in overcrowded classrooms, taught by unqualified teachers with inadequate facilities and equipment).

**B.     Plaintiffs Are Likely to Succeed on the Merits of Their McKinney-Vento Act and NYSEL § 3209 Claims.**

The McKinney-Vento Act and NYSEL § 3209 protect homeless students' right to access the same education offered to other students, and require LEAs to remove any barriers to education. *See* 42 U.S.C. §§ 11431(1), (2); N.Y.S. Educ. L. §§ 3209(6)(b), (7).[7] The PI Motion established that Defendants, by failing to remove the existing technological barriers to Plaintiffs' and other Class members' access to school during the COVID-19 pandemic, have not met these statutory mandates. Defendants' attempted rebuttal falls flat.

---

[7] Contrary to Defendants' suggestion (Opp. 17), the McKinney-Vento Act provides a clear private right of action. *See, e.g.*, *Nat'l Law Ctr.,* 224 F.R.D. at 321 ("The McKinney Act… evidences a clear and unambiguous intent of Congress to create individually enforceable rights."). Defendants' attempt to avoid liability by arguing that 42 U.S.C. § 11431(2) places obligations only on state education agencies is also misplaced. The McKinney-Vento Act requires "the State educational agency ***and local educational agencies in the State***" to "review and undertake steps to revise" any "regulations, practices, or policies [that] may act as a barrier to the . . . attendance, or success in school of, homeless children and youths." 42 U.S.C. § 11431(2) (emphasis added). This language clearly applies to Defendants. *See Nat'l Law Ctr.*, 224 F.R.D. at 321 (explaining that McKinney-Vento "provides mandatory entitlements to homeless children by clear and precise direction to state and local officials" and "obligates State and local agencies to perform in a specific way to ensure that homeless children are provided an education on par with that of nonhomeless children").

Defendants argue that these statutes are inapplicable because they lack express language requiring Defendants to install WiFi in shelters, and there is no case law interpreting these statutes as imposing such a requirement. (Opp. 16, 18.) That is hardly surprising: the COVID-19 pandemic and associated changes in school are without precedent. But that is not dispositive of whether Defendants have violated the law. Defendants are obligated to remove barriers to online learning. As explained in a 2016 policy letter sent by then-U.S. Secretary of Education John King, to comply with the McKinney-Vento Act, LEAs must ensure that homeless students do not face "barriers to accessing academic and extracurricular activities, ***including . . . online learning***."[8]

Moreover, courts have interpreted the McKinney-Vento Act as requiring LEAs to provide homeless students with transportation to school in recognition of the fact that students cannot receive an education if they cannot access their classroom. *See Lampkin v. District of Columbia*, 879 F. Supp. 116, 118-20, 125 (D.D.C. 1995) (McKinney-Vento requires districts to provide homeless students with transportation services beyond those they provide to nonhomeless students); *see also Nat'l Law Ctr.*, 224 F.R.D. at 317, 320 (same); *N.J. v. New York*, 872 F. Supp. 2d 204, 213-14 (E.D.N.Y. 2011) (same). It is precisely such access that Plaintiffs are being deprived of here; Defendants' transportation example only proves the point.[9]

---

[8] King, John B., Sec'y of Educ., U.S. Dep't of Educ., Dear Colleague Letter: Educational Rights of Homeless Children and Youths (July 27, 2016), www2.ed.gov/policy/elsec/guid/secletter/160726.html (emphasis added); *see also* 42 U.S.C. § 11432 (g)(1)(F)(iii) (same).

[9] Contrary to Defendants' suggestions (Opp. 16-17), courts have recognized alleged violations of rights under the McKinney-Vento Act in a wide range of situations, including where LEAs: disenrolled or threatened to disenroll children from their preferred school after becoming homeless (*N.J.*, 872 F. Supp. 2d at 213; *G.S. v. Rose Tree Media Sch. Dist.*, 914 F.3d 206, 211 (3d Cir. 2018); *L.R. ex rel. G.R. v. Steelton-Highspire Sch. Dist.*, 2010 WL 1433146, at *1 (M.D. Pa. Apr. 7, 2010)); failed to fulfill their duties to identify homeless families as defined by the act (*Bullock v. Bd. of Educ.*, 210 F.R.D. 556, 557 (D. Md. 2002); *Nat'l Law Ctr.*, 224 F.R.D. at 317); questioned whether a student was homeless as defined by the McKinney-Vento Act and so denied the Act's protections to that student (*N.J.*, 872 F. Supp. 2d at 208); failed to revise its policies related to discipline, suspension, expulsion, and residency (*S.C. v. Riverview Gardens Sch. Dist.*, 2019 WL 922248 at *6 (W.D. Mo. Feb 25, 2019)); and failed to educate homeless students in a manner comparable to nonhomeless children (*Nat'l Law Ctr.*, 224 F.R.D. at 317).

With respect to NYSEL § 3209 in particular, Defendants contend that the statute does not require Defendants to "guarantee a particular accommodation at the parents' request when there may be multiple ways to ensure compliance." (Opp. 18.) That assumes, of course, that the ways Defendants have selected in fact "ensure compliance" by adequately removing barriers to Plaintiffs' access to the virtual classroom. That is a heavily disputed factual question, not a legal basis for denial of the PI Motion on the papers.[10]

### C. Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Clause Claim.

The Fourteenth Amendment to the U.S. Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. art. XIV. Discriminatory treatment by the government is sufficient to trigger assessment under the Equal Protection Clause. *Lewis*, 252 F.3d at 590. In *Plyler v. Doe,* the Supreme Court acknowledged that although public education is not a "fundamental right," neither is it "merely some governmental 'benefit' indistinguishable from other forms of social welfare legislation." 457 U.S. 202, 221 (1982). Education is "so important to the American way of life and to the function of the state and local governments that any denial of education must be justified by some 'substantial goal' of the State." *Nat'l Law Ctr.*, 224 F.R.D. at 321 (citing *Plyler*, 457 U.S. at 223-224). Thus, "heightened" or "intermediate scrutiny" must be applied to government action that results in deprivation of educational access. *Plyler*, 457 U.S. at 224; *Nat'l Law Ctr.*, 224 F.R.D. at 322

---

[10] Defendants complain that they are being asked to install WiFi in over 200 locations within 30 days, and that such a request is unreasonable and not feasible. But the scope of the requested relief is not a cognizable defense to a preliminary injunction motion. *Cf. Chao v. Ladies Apparel Grp., Ltd.*, 2002 WL 1217194, at *5 (S.D.N.Y. 2002) ("The plaintiff has demonstrated that she is entitled to a preliminary injunction in this case. The scope of that injunction is a matter within the Court's discretion . . . .") (citing *SEC v. Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir.1990)). Moreover, Plaintiffs are entitled to test Defendants' position through fact discovery and a hearing. It may be the case that certain locations are higher priority than others, but Plaintiffs have no basis to know that without discovery. And, Defendants have known about connectivity issues in homeless shelters since the spring of 2020. That they have waited until now to meaningfully address the issue is not an excuse for Defendants to violate the law.

(following *Plyler* and holding that "heightened" scrutiny applied to a claim alleging unequal access for homeless students to public schools in Suffolk County).[11]

Here, the basis for Plaintiffs' Fourteenth Amendment claim is that homeless children are being denied the same educational access that nonhomeless children receive—circumstances that are significantly similar to those in *Plyler*, 457 U.S. at 224, 230 (where the Equal Protection Clause was held to bar a state policy that denied homeless students' access to a public school education), and in *National Law Center*, 224 F.R.D. at 321-22 (where plaintiffs stated an Equal Protection claim arising from homeless children's lack of access and transportation to public schools).

Thus, "heightened" scrutiny review plainly applies; Plaintiffs are not required to negate any reasonable conceivable set of facts (such as the current public health crisis) that could provide any rational basis for the classification of children.[12] Defendants cannot show, as they must to satisfy intermediate scrutiny, that their ongoing failure to remove barriers to access to the virtual classroom furthers any important government interest or that the classification is at least substantially related to serving that interest. *See Lalli v. Lalli*, 439 U.S. 259, 265 (1978).[13]

## CONCLUSION

Plaintiffs respectfully request that the Court grant the PI Motion.

---

[11] That the Supreme Court did not apply heightened scrutiny to user fees for school transportation, *see Kadrmas.*, 487 U.S. at 459 , does not render *Plyler* irrelevant. In *Kadrmas*, the Supreme Court made clear that statutes that penalize children for circumstances beyond their control, and that risk significant adverse consequences to those children, could merit review under *Plyler*. *Id.* That rationale applies with full force here.

[12] Defendants incorrectly claim that Plaintiffs have failed to allege a classification of people whose equal protection rights are being denied. (Opp. 20-21). Defendants' policies impose unique restrictions on, and act punitively to deny, *homeless students'* access to an education for no reason other than the misfortune of their parents. *Nat'l Law Ctr.*, 224 F.R.D. at 321-22. In addition, over 90% of children in homeless shelters in New York City are Black or Hispanic. This classification is distinct from those referenced by Defendants. Plaintiffs are not merely poor (*see Kadrmas*, 487 U.S. at 458) or homeless (*see Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000)). Plaintiffs are students, wholly reliant on the state for housing, who are being denied access to a public education by Defendants' policies.

[13] As set forth in the PI Motion, the balance of hardships weighs in Plaintiffs' favor. Plaintiffs are missing a significant amount of school—costing them their educational and personal development—at the expense of Defendants' inaction. The costs related to installing WiFi are small in the context of the City's annual budget, and, according to Defendants, is a cost Defendants anticipate undertaking in any event.

Dated: December 7, 2020
New York, New York

**THE LEGAL AID SOCIETY**

/s/ Susan J. Horwitz

Susan J. Horwitz
Janet Sabel
Adriene Holder
Judith Goldiner
Joshua Goldfein
Beth Hofmeister
Kathryn Kliff
199 Water Street
New York, NY 10038
Telephone: (212) 577-3300
SHorwitz@legal-aid.org

**MILBANK LLP**

/s/ Grant R. Mainland

Grant R. Mainland
Alison Bonelli
Maria Esperanza Ortiz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5251
GMainland@milbank.com

*Attorneys for Plaintiffs*