USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.G., *et al.*, <br><br> Plaintiffs, <br><br> –v– <br><br> City of New York, *et al.*, <br><br> Defendants. | 20-cv-9879 (AJN) <br><br> ORDER |

ALISON J. NATHAN, District Judge:

During the unprecedented COVID-19 pandemic, public schools in New York City have been largely closed since March to in-person learning. For all children, including the City's approximately 114,000 children who live in homeless shelters, education must be accessed virtually. Just like getting to brick and mortal schools requires reliable transportation, access to virtual school during the pandemic requires access to reliable internet. At the time this lawsuit was filed, however, almost none of the City's homeless shelters housing school-aged children had broadband WiFi internet installed.

Plaintiffs, parents of school-age children who live in homeless shelters and the Coalition for the Homeless, brought this putative class action, alleging that Defendants' failure to provide adequate and reliable access to the internet has violated the students' rights under state and federal statutory and constitutional law to receive a sound basic education notwithstanding their residence in homeless shelters.

Plaintiffs have filed a motion for a preliminary injunction and seek expedited discovery and an evidentiary hearing on the motion. In their response to Plaintiffs' preliminary injunction motion, Defendants argue that Plaintiffs had failed to state a claim on their federal and state

constitutional and statutory arguments. At base, the City contends that it is meeting its state and federal law obligations by doing its best and working to resolve the issues through a variety of means, including now working expeditiously to install WiFi internet access in all homeless shelters. Defendants ask the Court to resolve these preliminary legal arguments in advance of discovery and a hearing.

Having considered the parties' briefing and held oral arguments, the Court concludes that at least one of Plaintiffs' claims survives Defendants' legal arguments at this stage. Accordingly, the Court GRANTS Plaintiffs' request to set an expedited discovery schedule and schedule an evidentiary hearing and DENIES Defendants' request that the Court dismiss the motion for a preliminary injunction on the present record.

## I.    Factual Background

The following facts are undisputed unless otherwise noted. On March 15, 2020, Mayor de Blasio ordered the New York City public schools to shut down in response to the COVID-19 pandemic. *See* Dkt. No. 1 ("Compl.") ¶ 34. Over one million students, including the estimated 114,000 homeless students who attend those schools, were required to continue their education remotely. *Id.* Homeless students who resided in New York City shelters were especially vulnerable to this change, because of the around 200 shelters serving families with children in the DHS system, most failed to provide wireless internet access, or WiFi, to its residents. *Id.* ¶ 56. As a result, many of those students lacked the means to access the internet. And without such means, those students were deprived of the ability to continue their education.

By way of ensuring that those students' educational progress would not be hindered, the Department of Education ("DOE") devised a plan to provide students who lacked the means to attend class virtually with iPads that were equipped with unlimited cellular plans. *Id.* ¶¶ 36–38.

DOE initially contracted with T-Mobile to provide the cellular plans. *Id.* ¶ 38. But shortly after distributing the iPads, the City began receiving reports that they were having problems connecting to the internet. *Id.* ¶¶ 61–65. The problems appeared to stem from the fact that T-Mobile service in many of the shelters was unreliable or non-existent. By around August 2020, Defendants began to investigate and sought to remedy the problem further.

Over the coming months, Defendants devised a series of potential solutions to the problem. Most notable, the City replaced T-Mobile-serviced devices with Verizon-serviced devices for students who reported trouble connecting to the Internet. *See id.* ¶¶ 52, 80. Notwithstanding this, at least some students continued reporting problems connecting to the Internet through Verizon. At the same time, the City began developing plans to install WiFi in all New York City shelters. On October 26, 2020, Mayor Bill de Blasio announced that he had directed city officials to "ensure that every shelter gets WiFi." *Id.* ¶ 81. But in announcing the plan, city officials cautioned that the process would likely not be completed until summer 2021. *See id.* ¶ 83–89.

While many of the facts are still in dispute, and discovery has still not begun, it appears that Defendants have, in the last two months, proposed other means of ensuring that students residing in New York City shelters would not be deprived of their right to a sound, basic education. The City conducted a survey with families with school-aged children residing at DHS and HRA shelters to identify students who continued to face difficulties connecting to the internet. *See* Dkt. No. 34, Dean Decl., ¶¶ 9–11; Dkt. No. 35, Strom Decl., ¶¶ 7–9. And Defendants sent technical support assistants to troubleshoot whether the students' connectivity problems could be fixed by switching them to devices that used Verizon service as opposed to T-Mobile service. Dkt. No. 36, Sharma Decl., ¶¶ 13–15.

In their most recent update, filed on December 18, 2020, Defendants represented that they have continued to conduct outreach by phone seeking feedback on the Verizon service. *See* Dkt. No. 46 at 2. They expect that process to be completed by January 18, 2021. *Id.* And they proffer that once they have identified those students who continue to face connectivity problems, they expect to provide a number of opportunities to students, including enrollment in the Learning Bridges program, which would allow them to access WiFi at specifically designated sites, along with individualized plans for students for whom Learning Bridges was not a feasible option. *Id.* By Defendants' own admission, that process has not yet been completed. *See id.*

Meanwhile, Plaintiffs claim that they have continued to experience substantial problems. O.M., one of the named plaintiffs, avers that even after his child was given an iPad with Verizon cellular service, connectivity issues remained, and that efforts to remedy the problem have to date been ineffective. *See* Dkt. No. 15, Ex. K, O.M. Decl., ¶¶ 8–10. The other named Plaintiffs similarly claim that the problems have subsisted to the detriment of their children's education. Dkt. No. 15, Ex. L, M.M. Decl., ¶¶ 9–13; Dkt. No. 15, Ex. M, E.G. Decl., ¶¶ 7–12. Plaintiffs' most recent update, filed on December 22, 2020, indicates that all of the named plaintiffs continue to have trouble connecting to their online classes. *See* Dkt. No. 48.

**II.    Procedural Posture**

On November 24, 2020, Plaintiffs filed the present Complaint. *See* Dkt. No. 1. Along with the Complaint, Plaintiffs also requested a preliminary injunction to order Defendants to equip all New York City shelters housing school-aged children with reliable WiFi access by no later than January 4, 2021. *See* Dkt. No. 6. Along with their motion for a preliminary injunction, Plaintiffs filed a memorandum of law outlining their legal arguments as to why the injunction should issue. Dkt. No. 14 ("Pl. Br.").

On November 30, 2020, the Court set a briefing schedule and directed the parties to inform the Court on whether either side would seek an evidentiary hearing on Plaintiffs' motion. Dkt. No. 27. Plaintiffs indicated that they believe an evidentiary hearing and discovery are necessary, while Defendants oppose discovery and indicated that the motion should be decided on the briefing papers because, according to Defendants, "all of Plaintiffs' claims fail as a matter of law." *See* Dkt. No. 28. Defendants filed their opposition brief to Plaintiffs' motion for a preliminary injunction on December 4, 2020. Dkt. No. 32 ("Def. Opp. Br."). Plaintiffs filed their reply on December 7, 2020. Dkt. No. 38 ("Reply Br.").

In light of Defendants' argument that all of Plaintiffs' claims fail as a matter of law, the Court scheduled oral argument to resolve the issue of whether any of Plaintiffs' claims would survive at this juncture. Dkt. No. 42. The Court then held oral argument on December 16, 2020.

### III.   Discussion

Although the Defendants have not yet formally filed a motion to dismiss, they argue that the motion for preliminary injunction should be denied without discovery or a hearing because all of Plaintiffs' claims fail as a matter of law.[1] In considering these arguments, the Court accepts as true the allegations in the complaint and draws all reasonable inferences in the Plaintiffs' favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see* Dec. 16, 2020 Transcript ("Tr.") at 78:10–78:16.

---

[1] Defendants also argue that even if any claims survive as a matter of law, that the motion for preliminary injunction should be denied because on the papers the Plaintiffs have not met their burden of establishing a likelihood of success on the merits. *See* Tr. 13:21–14:4. The Court concludes that there are material factual disputes in the paper record, and because the Plaintiffs have requested discovery and hearing to establish their entitlement to preliminary injunctive relief, it is premature to make that determination.

The Court concludes that at least one of Plaintiffs' claims survives Defendants' legal arguments at this stage.  Specifically, Plaintiffs have stated a claim that Defendants' failure to provide reliable internet access to date violates New York Education Law § 3209.  Because the Court concludes that that is sufficient to justify Plaintiffs' request for expedited discovery and an evidentiary hearing, the Court need not reach the viability of Plaintiffs' constitutional claims or federal statutory claim at this juncture.

Plaintiffs argue that Defendants have violated their duties under New York State Education Law § 3209.  *See* Compl. ¶¶ 130–35.  This section of the New York Education Law "incorporates the requirements of the McKinney–Vento Act," which forms the basis of another of Plaintiffs' claims, "and sets forth the provisions for the education of homeless children within the state." *N.J. v. New York*, 872 F. Supp. 2d 204, 210 (E.D.N.Y. 2011).

### A. New York State Education Law § 3209(6)(b)

Plaintiffs first sue under Section 3209(6)(b) of the New York Education Law, which provides, in relevant part, that school districts must "review and revise any local regulations, policies, or practices that may act as barriers to the enrollment or attendance of homeless children in school or their receipt of comparable services."  N.Y. Educ. Law § 3209(6)(b).  The Court concludes that at this juncture, Plaintiffs have adequately pleaded that transitioning to remote learning without providing homeless students reliable means to access the internet creates the kind of "barriers to the . . . attendance of homeless children in school or their receipt of comparable services," as contemplated in the statute.  *See* N.Y. Educ. Law § 3209(6)(b).  Indeed, Defendants do not dispute that, under the circumstances, they are obligated to provide homeless students with adequate means to access the internet—an undisputedly essential element of these

students' ability to attend school in light of Defendants' decision to transition to remote learning due to the circumstances created by the pandemic.

But Defendants argue that they are not in violation of § 3209 because, according to them, their efforts to date have satisfied their burdens under the statute. More specifically, Defendants argue that Plaintiffs have failed to state a claim under § 3209 because Plaintiffs did not "point to anything in [the] statute that could plausibly be interpreted to require Defendants to install WiFi in all shelters, let alone do so, in a severely abbreviated timeframe, during the COVID-19 pandemic." Def. Opp. Br. at 18. And they also argue that § 3209(6)(b) "places no obligation on local education organizations to guarantee a particular accommodation at the parents' request when there may be multiple ways to ensure compliance with the state mandates." *Id.* Finally, they claim that Plaintiffs' assertion that § 3209(7) "requires Defendants to install WiFi at over 200 shelters in 30 days strains credulity." *Id.*

These arguments fail at this stage. The issue underlying Plaintiffs' claim under § 3209 is whether Defendants have a duty to ensure that homeless students have the means necessary to access the internet when schooling is predominantly taking place remotely. As already noted, Defendants do not meaningfully dispute that such a duty exists. Instead, they argue that they have satisfied that duty through their efforts to provide students with iPads that have unlimited cellular service and their efforts to troubleshoot and remedy the connectivity problems that some students reported shortly after the iPads were distributed. *See* Def. Opp. Br. at 3–8. But Plaintiffs do not challenge the *existence* of those efforts. Rather, they claim that despite those efforts, the children of the named Plaintiffs, along with an as-yet-unascertained number of homeless students residing in shelters, continue to lack reliable access to the internet and that the City's plans for installation of WiFi are insufficiently expeditious to meet the statutory

obligation. Resolution of these factual disputes cannot be made before discovery and an evidentiary hearing. But at a minimum, the Plaintiffs' allegations are sufficient to state a claim. To the extent that Defendants' efforts to date have failed to remedy the barriers that prevent homeless children from being able to participate in remote learning, the question is not whether those children are entitled to a *particular* accommodation but to *any* accommodation that meaningfully fixes the problems that have been identified. And as discussed above, Plaintiffs have adequately pled that notwithstanding the City's efforts, significant barriers to homeless students' education persist.

### B. New York State Education Law § 3209(7)

The same holds true for Plaintiffs' claim under § 3209(7). Section 3209(7) provides that "[p]ublic welfare officials, except as otherwise provided by law, shall furnish indigent children with suitable clothing, shoes, books, food, transportation and other necessaries to enable them to attend upon instruction as required by law." N.Y. Educ. Law § 3209(7). The Court concludes that under the circumstances, the means to reliably access the internet falls within the scope of the "necessaries" that officials must provide to enable homeless students to "attend" school for the duration of the pandemic. *See* N.Y. Educ. Law § 3209(7).

Defendants argue that the statutory provision cannot be read to require Defendants "to install WiFi at over 200 shelters in 30 days." Def. Opp. Br. at 18. Maybe so. But the statute unambiguously requires that "[p]ublic welfare officials, except as otherwise provided by law, shall furnish indigent children with suitable clothing, shoes, books, food, transportation *and other necessaries* to enable them to attend upon instruction as required by law." N.Y. Educ. Law § 3209(7) (emphasis added). The complaint alleges that Plaintiffs' children, like many homeless students also residing in New York City shelters, currently lack the "necessaries" to attend

school remotely. Supporting this reading is the close parallel between transportation to school and internet access during the COVID-19 pandemic. As one state court has noted, "[f]unds for school transportation are a necessity under the meaning of these provisions. . . . [T]hese statutes clearly obligate City DSS to provide actual transportation expenses, both for children until they obtain transportation passes from the Board of Education, and for the parents of young children who must be accompanied to school." *McCain v. Koch*, 502 N.Y.S. 2d 720, 733 (1986), *rev'd in part on other grounds*, 70 N.Y. 2d 109 (1987). In the remote learning context, internet connectivity serves the same function as does transportation when education takes place in person at the schoolhouse. *See* John Wachen and Mark Johnson, *Examining Equity in Remote Learning Plans: A Content Analysis of State Responses to COVID-19*, The Learning Partnership, 3 (Nov. 2020), https://www.jointhepartnership.net/wp-content/uploads/2020/11/State-Remote-Learning-Analysis_TechReport_Nov2020.pdf ("Students' and families' ability to access devices and the internet is critically important for equitable remote learning."). Without internet connectivity, homeless students are deprived of the means to attend classes. And because homeless children who lack internet access and reside in New York City shelters cannot attend school for as long as that deprivation exists, the City bears a duty, under the statute, to furnish them with the means necessary for them to attend school. Whatever the scope of the particular remedy—the main focus of Defendants' opposition, *see* Def. Opp. Br. at 18—the obligation to furnish students with the means to attend classes remains. As pled in the complaint, that duty is not now being met.

In that regard, Plaintiffs' § 3209 claim survives Defendants' legal arguments. Plaintiffs have stated a claim that they are entitled to receive the means by which homeless students may attend school, and they have pled that, at least for some students, including the named Plaintiffs'

children, the Defendants' efforts to date have not remedied their injury. As a result, the Court rejects Defendants' argument that Plaintiffs' § 3209 claim fails as a matter of law.

Having determined that at least one of Plaintiffs' claims survives, the Court need not reach the viability of Plaintiffs' remaining claims at this juncture.

### IV.     Conclusion

Defendants' request to deny the preliminary injunction motion based on the existing record is DENIED. All of the remaining issues that must be resolved prior to the Court's determination of whether a preliminary injunction should issue—and, if so, what that injunction should look like—require discovery and an evidentiary hearing.[2]

The Court therefore GRANTS Plaintiffs' request for expedited discovery on these and other disputed factual issues in advance of an evidentiary hearing. The parties shall discuss with Magistrate Judge Freeman an appropriate schedule for expedited discovery and a proposed week for the Court to conduct an evidentiary hearing. The schedule put in place by Judge Freeman shall control. As soon as the parties inform the Court of the proposed week to conduct the evidentiary hearing, the Court will confirm the specific date and time. The hearing will be conducted remotely using videoconferencing technology.

SO ORDERED.

Dated: December 30, 2020
       New York, New York

ALISON J. NATHAN
United States District Judge

---

[2] Among other things, the parties disagree as to the efficacy of the efforts that Defendants have recently undertaken to remedy the problem of students' lack of access to the Internet. They also dispute how long it would take to complete WiFi installation, and they dispute whether alternative remedies may provide the necessary access prior to the completion of the WiFi installation. These issues bear on whether a preliminary injunction should issue, and, if so, what the scope of the injunction should be.