# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.G., individually and as parent and natural guardian of A.I. and L.I., minor children; M.M., individually and as parent and natural guardian of E.H., L.H., Ev.P., and E.P., minor children; O.M., individually and as parent and natural guardian of A.M., a minor child; and COALITION FOR THE HOMELESS, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. 1:20-cv-9879 (AJN) |
| | |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; RICHARD A. CARRANZA, as Chancellor of the New York City Department of Education; NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES; STEVEN BANKS, as Commissioner of the New York City Department of Social Services; NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES; JOSLYN CARTER, as Administrator of the New York City Department of Homeless Services; NEW YORK CITY HUMAN RESOURCES ADMINISTRATION; GARY JENKINS as Administrator of the New York City Human Resources Administration; NEW YORK CITY DEPARTMENT OF INFORMATION TECHNOLOGY AND TELECOMMUNICATIONS; and JESSICA TISCH, as Commissioner of the New York City Department of Information Technology and Telecommunications,, | |
| | |
| Defendants. | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.............................................................................1

FACTS .........................................................................................................3

I. The COVID-19 Pandemic Caused a Seismic Shift in Education in New York
City From In- Person to Remote Learning Beginning March 2020...............3

II. The Named Plaintiffs....................................................................................5

ARGUMENT .................................................................................................5

I. LEGAL STANDARD.......................................................................................5

II. DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED
BECAUSE PLAINTIFFS' FEDERAL CLAIMS FAIL AS A MATTER OF
LAW AND THE COURT SHOULD DECLINE TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS......5

   A. Plaintiffs' Equal Protection Clause Claim Fails As a Matter of Law ..........6

      <u>1.</u> Plaintiffs Fail To Allege That Defendants Discriminate Between
Different Classes of Citizens..............................................................7

      2. Plaintiffs Have Not Alleged Any Definable Suspect Class................8

      3. Plaintiffs Have Not Alleged Violation of a Fundamental Right and
Cannot Show That Heightened Standard of Review Applies.........9

      4. Plaintiffs' Claim Fails Under Either The Highly Deferential Rational
Basis Review Or Heightened Scrutiny.....................................11

   B. Plaintiffs Fail to State a Claim Under the McKinney-Vento Act..............12

      1. Sections 11432(2) and 11432(d) Do Not Create Rights That Plaintiffs
Can Enforce Either Through an Implied Private Right of Action or Through
Section 1983.........................................................................14

      2. The Amended Complaint Establishes That Defendants are Complying
With the MVA.................................................................... 20

   C. The Court Should Decline to Exercise Supplemental Jurisdiction Over
Plaintiffs' State Law Claims ....................................................21

      1. The New York Education Law Section 3209 Claim Raises Novel and
Complicated Issues of State Law That May Have Sweeping
Implications for Local Governments and School Districts Across New
York.................................................................................22

2. The Education Article Claim Should Be Dismissed, But at a Minimum Raises a Question of First Impression About the New York Constitution…………………………………………………………….23

CONCLUSION ......................................................................................26

# TABLE OF AUTHORITIES

## Cases

42 U.S.C. § 11432 ................................................................................................ 13, 14, 16

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .................................................. 16, 18

*Aristy-Farer v. State of New York*, 29 N.Y.3d 501 (NY 2017) ........................... 23, 25

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ............................................. 6

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ......................... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5

*Backer* ex rel. *Freedman v. Shah*, 788 F.3d 341 (2d Cir. 2015) ........................ 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ......................................... 5

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) ....................... 15, 16, 17, 18

*Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) ................................. 6

*California v. Sierra Club*, 451 U.S. 287 (1981) .................................................. 16

*Campaign for Fiscal Equity v. State*, 86 N.Y.2d 307 (NY 1995) .......................... 24

*Campaign for Fiscal Equity, Inc. v. State of New York*, 100 N.Y.2d 893  (NY 2003) ................. 24

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ............................ 12

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ....................................... 6

*Comcast Corp. v. Nat'l Ass'n of African-American-Owned Media*, 140 S. Ct. 1009, 1015 (2020) ................................................................................................ 15

*Dandridge v. Williams*, 397 U.S. 471 (1970) ...................................................... 12

*Davis v. Shah*, 821 F.3d 231, 246 (2d Cir. 2016) ............................................... 17

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ........................ 9

*Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68 (3d Cir. 1996) ............................... 12

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) ......................................... 8

*FCC v. Beach Comm'ns*, 508 U.S. 307 (1993) ................................................... 11

*Franza v. Carey*, 518 F. Supp. 324 (S.D.N.Y. 1981) .......................................... 7

*Fullwood v. Vosper*, No. 9:99CV1586, 2007 U.S. Dist. LEXIS 1840 (N.D.N.Y. Jan. 9, 2007) .... 7

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ....................................... 15, 16, 19

*Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204 (N.D.N.Y. 2011) ................................................................................................ 12

*Jackson v. Roeman Real Estate Co.*, 787 F.2d 590 (6th Cir. 1986) ...................... 7

*Joel v. City of Orlando*, 232 F.3d 1353 (11th Cir. 2000) .................................... 9

*Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450 (1988) .................................. 6, 10

*Kreimer v. Bureau of Police*, 958 F.2d 1242 (3d Cir. 1992) ................................ 9

*Lampkin v. District of Columbia,* 27 F.3d 605 (D.C. Cir. 1994) ...................... 13, 17

*Maldonado v. George Weston Bakeries*, 441 F. App'x 808 (2d Cir. 2011) ............ 8

*Manbeck v. Katonah-Lewisboro Sch. Dist.*, 435 F. Supp. 2d 273 (S.D.N.Y. 2006) .............. 10

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ..................... 5

*McCoy v. Richards*, 771 F.2d 1108 (7th Cir. 1985) ............................................. 7

*McGowan v. Maryland*, 366 U.S. 420 (1961) ...................................................... 8

*Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356 (S.D.N.Y. March 30, 2017) .... 11

*Mo., K. & T. R. Co. v. Cade*, 233 U.S. 642 (1914) .............................................. 7

*Morse v. Univ. of Vt.*, 973 F.2d 122 (2d Cir. 1992) ............................................. 23

*New York Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 78 (2d Cir. 2019) ........................ 15

*N.J. v. New York*, 872 F. Supp. 2d 204 (E.D.N.Y. 2011) ............................................................ 18

*N.Y. Civ. Liberties Union v. State*, 4 N.Y.3d 175 (NY 2005)........................................... 23, 24, 25

*Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314 (E.D.N.Y. 2004) ...... 17

*National Law Center on Homelessness & Poverty v. New York*, 224 F.R.D. 314 (E.D.N.Y. 2004)
.................................................................................................................................. 10, 13

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ............................................................................ 8

*Paynter v. State*, 100 N.Y.2d 434 (2003).......................................................................... 23, 24

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17-18 (1981)..................................... 15

*Plyler v. Doe*, 457 U.S. 202 (1982)................................................................................... 6, 10

*Reform Educ. Fin. Inequities Today v. Cuomo*, 86 N.Y.2d 279 (1995) ..................................... 23

*S.C. v. Riverview Gardens Sch. Dist.*, No. 18-cv-04162-NKL, 2019 U.S. Dist. LEXIS 29282
    (W.D.Mo. Feb. 25, 2019),..................................................................................................... 18

*San Antonio Independent School District v. Rodriguez,* 411 U.S. 1 (1973 ................................. 10

*Seabrook v. Jacobson*, 153 F.3d 70 (2d Cir. 1998)...................................................................... 21

*Turner v. E. Meadow Sch. Dist.*, No. 07-CV-4318 (JS)(AKT), 2009 U.S. Dist. LEXIS 29524
    (E.D.N.Y. Mar. 31, 2009).................................................................................................... 10

*United States v. Williams*, No. 02 C 4990, 2003 U.S. Dist. LEXIS 9988(N.D. Ill. June 10, 2003) 7

*Valencia v. Sung M. Lee,* 316 F.3d 299 (2d Cir. 2003) ......................................................... 6, 21

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .............................. 9

*Wallace v. New York*, 40 F. Supp. 3d 278 (E.D.N.Y. 2014)......................................................... 9

*Wallers v. United States*, 847 F.2d 1279 (7th Cir. 1988)............................................................. 8

*Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985)..................................................... 6

## Statutes

28 U.S.C. § 1367................................................................................................................ passim

42 U.S.C. § 1132-33 ................................................................................................................ 13

42 U.S.C. § 11431.......................................................................................................... 6, 14, 16

42 U.S.C. § 1983.................................................................................................... 2, 6, 15, 19

Article XI § 1 of the New York Constitution .............................................................................. 6

Equal Protection Clause ........................................................................................... 5, 6, 7, 8, 9

Federal Rule of Civil Procedure 12(b)(6)……………………………………………………1,5

McKinney-Vento Act.......................................................................................................... passim

New York Constitution Education Article........................................................... 2, 23, 24, 25

New York Education Law § 3209 ....................................................................... 1, 2, 3, 6, 22

Defendants the City of New York (the "City"), the New York City Department of

Education ("DOE"), Chancellor of the New York City Department of Education Richard A.

Carranza, the New York City Department of Social Services ("DSS"), Commissioner of DSS

Steven Banks, the New York City Department of Homeless Services ("DHS"), Administrator of

DHS Joslyn Carter, the New York City Human Resources Administration ("HRA"),

Administrator of HRA Gary Jenkins, the New York City Department of Information Technology

and Telecommunications ("DoITT"), and Commissioner of DoITT Jessica Tisch (collectively

"Defendants") move to dismiss Plaintiffs' Amended Complaint for lack of subject matter

jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Through this class action complaint, Plaintiffs, who include three parents of school-aged

children who currently reside in City shelters, claim Defendants are legally obligated to provide

them with a WiFi connection in their residences in order for their children to participate in

remote learning during the COVID-19 pandemic. This Court's Order dated December 30, 2020

(the "Order") held that Plaintiffs had stated a claim that Defendants' failure to provide reliable

internet access to date violates New York Education Law § 3209, but did not address the

sufficiency of Plaintiffs' federal law claims. Those federal law claims fail as a matter of law and,

pursuant to 28 U.S.C. § 1367(c)(1) and (c)(3), the Court should decline to exercise supplemental

jurisdiction over the remaining claims, which raise novel and complicated issues of state law.

First, Plaintiffs' claim that Defendants violate the Equal Protection Clause of the United

Stated Constitution must be dismissed because Plaintiffs' allegations fail to establish that

Defendants' actions have created any classification. Although Plaintiffs allege that homeless

children are not receiving the same access to free public education as non-homeless children,

they do not allege that Defendants are providing WiFi or internet access to non-homeless

children or have otherwise treated homeless students differently from non-homeless students. Indeed the Amended Complaint acknowledges Defendants' delivery of technology and services to provide all students – including students in shelter – access to remote learning, including by providing cellular internet service-enabled iPads and hotline support for technical assistance. Further, for students residing in shelter, as the Amended Complaint concedes, Defendants are currently installing WiFi in shelters, which Plaintiffs do not allege Defendants are providing to non-homeless children. Recognizing an equal protection claim under these circumstances would stretch the case law beyond recognition. Furthermore, Plaintiffs' Equal Protection claim also fails because the Amended Complaint does not establish that Defendants are discriminating against a suspect class or burdening a fundamental right, and Defendants actions satisfy the highly deferential rational basis review (or even heightened scrutiny).

Second, Plaintiffs' other claim under federal law—that Defendants violate provisions of the McKinney-Vento Act ("MVA") —fares no better. Plaintiffs have no right of action to enforce the provisions of the MVA they allege Defendants violate, either directly under the statute or under Section 1983. In any event, Plaintiffs' allegations that Defendants provided Plaintiffs with iPads equipped with unlimited cellular data service and are in the process of installing WiFi in shelters demonstrate that Defendants are in compliance with the MVA.

Because both federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under § 1367(c)(3). The Court should also decline to exercise supplemental jurisdiction pursuant to § 1367(c)(1) because both claims raise complex and novel questions of state law. Neither the New York Constitution Education Article ("Education Article") nor New York Education Law ("NYEL") § 3209 references WiFi or internet access. Furthermore, first, the potential broadening of NYEL § 3209(6)(b) and (7) to

require local school districts across New York to provide WiFi or internet access not only to students in shelter but to "all indigent children;" second, the prospective expansion of a state constitutional claim, beyond the contours of the claim developed through existing Court of Appeals case law; and third, principles of federalism and comity all dictate declining supplemental jurisdiction over these claims.[1]

## **FACTS**[2]

### I.     **The COVID-19 Pandemic Caused a Seismic Shift in Education in New York City From In-Person to Remote Learning Beginning March 2020**

In or around December 2019, the novel coronavirus SARS-CoV-2 began spreading an acute respiratory disease, COVID-19, in various locations around the world. Am. Compl. ¶ 31. COVID-19 has spread to hundreds of countries and territories; millions have contracted the disease, and more than 550,000 people globally have died. *Id.* On January 31, 2020, the United States government declared the COVID-19 outbreak a public emergency. Am. Compl. ¶ 32.

On March 15, 2020, Mayor de Blasio announced the closure of New York City public school buildings in response to the COVID-19 pandemic. Am. Compl. ¶ 34. More than one million students in the City's public schools were required to continue their education remotely because of the virus. Am. Compl. ¶¶ 2, 34. In March 2020, DOE distributed over 300,000 devices to New York City students, including those residing in shelters, who did not have a device at home to allow them to attend class virtually. Am. Compl. ¶¶ 37, 44, 47, 51-52. DOE

---

[1]Both state law claims should also be dismissed on the merits. Although the Court held in its Order that Plaintiffs sufficiently state a claim under NYEL § 3209 to proceed to a preliminary injunction hearing, discussed more fully below, *infra* at Section II.C, Defendants incorporate their arguments made in their Opposition to Plaintiffs' Preliminary Injunction Motion (Dkt. No. 32) that this claim fails as a matter of law to preserve the issue for appeal.

[2] These facts are the allegations of the Amended Complaint. Defendants do not concede that the allegations are true and reserve their right to dispute the facts.

also contracted with T-Mobile, a provider of cellular technology services, to equip the devices with cellular plans that would enable them to connect to the internet. Am. Compl. ¶ 38.

Plaintiffs allege that reports emerged that children residing in shelters were unable to access remote classes because of T-Mobile cellular service "dead zones" or insufficiently robust T-Mobile cellular coverage resulting in spotty internet service and difficulty accessing existing WiFi networks at the shelters. Am. Compl. ¶¶ 41-42. To assist students and parents with technical support, DOE arranged for a support hotline. Am. Compl. ¶ 42.

In July 2020, Mayor de Blasio announced that the City's public schools would not fully open for the 2020-2021 school year, but there would instead be a "blended" learning option. Am. Compl. ¶ 66. Families could choose whether their children would attend fully remote learning or a blended program where the children would spend one to three days a week at school and attend remotely for the rest of the week. *Id.* On September 16, 2020, the school year began remotely for all children. Am. Compl.¶ 74. On October 1, 2020, all public school students who opted for the blended program were able to attend in-person classes. Am. Compl. ¶ 74. The City's blended learning program was subject to a caveat – if the percentage of positive COVID-19 tests in New York City exceeded 3% using a 7-day rolling average, schools would close and return to fully remote learning. Am. Compl. ¶ 70. On November 18, 2020, this threshold was reached; New York City public schools switched to fully remote learning the next day. *Id.*

On October 26, 2020, weeks before the return to all remote learning, the Mayor instructed City agencies to install WiFi at the City's homeless shelters. Am. Compl. ¶ 81. Forty-eight hours later, Defendants outlined the City's plan for installing WiFi at shelters, with the aggressive goal of completing 27 priority sites in the winter and the entire WiFi installation project by the summer of 2021. Am. Compl. ¶ 83.

## II.     The Named Plaintiffs

Plaintiffs E.G., M.M., and O.M. are the parents of children who attend DOE schools, and they and their children live in shelters in the City (the "Named Plaintiffs"). Am. Compl. ¶¶ 14-16. All of the school aged children of the Named Plaintiffs are attending school remotely because of family health concerns related to COVID-19. Am. Compl. ¶¶ 14-16, 43, 48, 50. All of Named Plaintiffs' children have received cellular internet service-enabled iPads from DOE. Am. Compl. ¶¶ 44, 47, 51. Plaintiff E.G. lives at a shelter that has WiFi, but the service does not consistently cover the needs in the family's living space. Am. Compl. ¶ 44. Plaintiffs M.M. and O.M. allege that they live at shelters that do not have WiFi. Am. Compl. ¶¶ 47, 51. The Named Plaintiffs all assert that they have not been able to consistently connect to the internet using the DOE-provided iPads. Am. Compl. ¶¶ 45, 47, 51-52.

## <u>ARGUMENT</u>

## I.     LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.     DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFFS' FEDERAL CLAIMS FAIL AS A MATTER OF LAW AND THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

Plaintiffs allege that by failing to provide internet access to homeless students, Defendants have violated the following constitutional and statutory provisions: (1) the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (2) the MVA, 42

U.S.C. 11431 *et seq*; (3) New York State Education Law § 3209; and (4) Article XI § 1 of the New York Constitution.[3] Because the federal claims fail as a matter of law, the Court should decline to exercise supplemental jurisdiction over both state law claims. *See* 28 U.S.C. § 1367(c)(1) and (c)(3); *see also Valencia v. Sung M. Lee,* 316 F.3d 299, 305-308 (2d Cir. 2003).

**A. Plaintiffs' Equal Protection Clause Claim Fails As a Matter of Law**

The Equal Protection Clause provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 61 (2d Cir. 1985) ("[a]bsent a claim that the [policy or practice] is unconstitutional on its face . . . plaintiffs must allege and show that the defendants intentionally treated the[m] . . . differently from other[s] [that are] similar[ly situated]"). "Unless governmental action provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457-58 (1988).

---

[3] Plaintiffs' Section 1983 claim, premised on Defendants' alleged violations of the Equal Protection Clause and the MVA, must be dismissed because those federal claims fail as a matter of law. *See infra* Section II.A-B. Additionally, the individually named defendants are entitled to qualified immunity because they committed no violations of any "clearly established" rights, and "it was objectively reasonable for them to believe that their acts did not violate [any alleged] rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). Reliable access to WiFi or internet is not delineated in the MVA, and it was certainly reasonable for the individually named defendants to believe their actions, including providing cellular internet service and installing WiFi, did not violate any law. *See infra* Section II.B. Additionally, Plaintiffs request declaratory judgment stating that Defendants have violated these laws. Because these substantive constitutional and statutory claims should be dismissed, the request for declaratory relief should be denied.

Here, the Equal Protection claim must be dismissed because Plaintiffs fail to allege that Defendants have created a classification by intentionally treating them differently from others that are similarly situated. This failure is fatal. The Amended Complaint also fails to establish that Defendants discriminate against a suspect class or violate a fundamental right, and Defendants' actions easily satisfy the highly deferential rational basis review that must be applied to Defendants' policies regarding remote learning and the provision of benefits during a pandemic. Thus, Defendant's motion to dismiss the Equal Protection claim must be granted.

### 1. Plaintiffs Fail To Allege That Defendants Discriminate Between Different Classes of Citizens

An equal protection claim requires Plaintiffs to allege that a defendant discriminates between different classes of citizens; without such a classification, there is no claim. *See Mo., K. & T. R. Co. v. Cade*, 233 U.S. 642, 649-50 (1914) ("There is here no classification . . . ; the act bears equally against individuals and against corporations of any class doing business in the State . . . [without] discrimination between different citizens or classes of citizens" and "does not render the statute repugnant to the 'equal protection' clause."); *Jackson v. Roeman Real Estate Co.*, 787 F.2d 590 (6th Cir. 1986) ("[the law] makes no classification, and, therefore, the court [action] under that section does not violate the Equal Protection Clause"); *Franza v. Carey*, 518 F. Supp. 324, 330 n.10. (S.D.N.Y. 1981) (same result)[4]. Plaintiffs must allege a class that is treated differently from and "disfavored in comparison with similarly situated [persons]."

---

[4] *See also Fullwood v. Vosper*, No. 9:99CV1586, 2007 U.S. Dist. LEXIS 1840, at *18 (N.D.N.Y. Jan. 9, 2007) (where plaintiff "not only fails to identify a protected classification, [but] fails to identify any classification . . . [the] complaint does not state a cognizable equal protection claim . . . [and] this claim will be dismissed"); *United States v. Williams*, No. 02 C 4990, 2003 U.S. Dist. LEXIS 9988, at *12 (N.D. Ill. June 10, 2003) ("Even the deferential 'rational basis' scrutiny that is applied to ordinary government classifications is not appropriate when the challenged law creates no classifications.") (citing *McCoy v. Richards*, 771 F.2d 1108, 1112 (7th Cir. 1985)).

*Wallers v. United States*, 847 F.2d 1279, 1281-82 (7th Cir. 1988) (the court was "not persuaded that [the group denied tax exemption] suffer[ed] a real disadvantage in relation to [another group receiving the tax exemption]); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'").

Plaintiffs acknowledge that Defendants have provided students in shelters several benefits and services to enable them to access remote learning that are similar to the benefits and services provided to students who are not residing in shelters, including providing students in shelters with internet-enabled iPads with unlimited data service and hotline technology support to address technology issues. Plaintiffs also acknowledge that Defendants have embarked on a project to install WiFi at shelters. Am. Compl. ¶¶ 8, 60. Defendants cannot be disfavoring plaintiffs by providing them the same services and benefits provided to other students, and, in addition, providing them the further benefit of WiFi installation. To the extent that Plaintiffs allege that Defendants should have installed WiFi at shelters sooner or more quickly, Defendants' actions have not created a classification within the meaning of equal protection jurisdiction and Plaintiffs do not state a claim under the Equal Protection Clause. Thus, "dismissal is . . . appropriate [because] the plaintiffs 'fail[ ] to allege even the basic elements of a discriminatory action claim[.]'" *Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (quoting *Patane v. Clark*, 508 F.3d 106, 112 & n.3 (2d Cir. 2007)).

### 2.   Plaintiffs Have Not Alleged Any Definable Suspect Class.

Even if the Court found that Defendants' actions create a classification, Plaintiffs have not alleged any definable suspect class. The Supreme Court has held that wealth is not a suspect

class. *Kadrmas*, 487 U.S. at 458 (declining to define suspect classification based on wealth). Neither is homelessness. *See Wallace v. New York*, 40 F. Supp. 3d 278, 330 (E.D.N.Y. 2014) ("*homeless* sex offenders[]do not constitute a suspect classification") (emphasis in original); *see also Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("Homeless persons are not a suspect class"); *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1269 n.36 (3d Cir. 1992) (same).To the extent Plaintiffs attempt to allege a disparate impact theory, as where they allege that Black and Hispanic/LatinX students are disproportionately represented in the City's shelter system, Am. Compl. ¶ 69, overrepresentation of a protected class in a population on its own is insufficient to state an equal protection claim. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915-16 (2020) ("Were this fact [that a racial or ethnic group makes up a larger share of a certain population and thus is likely an outsized share of recipients of a government program] sufficient to state a claim, virtually any generally applicable . . . policy could be challenged on equal protection grounds.*"*). Plaintiffs must allege racially discriminatory intent or purpose for governmental action to be unconstitutional under the Equal Protection Clause based on a racial disparate impact theory. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). They fail to do so here. Nor do Plaintiffs allege that Black and Hispanic/LatinX students' disproportionate representation in the shelter system is the result of racially discriminatory action by Defendants or Defendants' actions challenged in this case. The failure to plead such facts forecloses Plaintiffs' equal protection claim.

### 3.  Plaintiffs Have Not Alleged Violation of a Fundamental Right and Cannot Show That Heightened Standard of Review Applies

The Court need not reach the question of whether Plaintiffs allege a violation of a fundamental right because Defendants' actions create no classification; however, Plaintiffs' allegation for a right to access reliable WiFi or the internet is plainly not a fundamental right.

Additionally, no constitutionally-protected fundamental right to an education exists under federal law. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 33-35 (1973); *Kadrmas*, 487 U.S. at 458 ("[n]or have we accepted the proposition that education is a 'fundamental right' . . . which should trigger strict scrutiny"); *Manbeck v. Katonah-Lewisboro Sch. Dist.*, 435 F. Supp. 2d 273, 276 n.2 (S.D.N.Y. 2006) ("there is no fundamental right to education" under the Fourteenth Amendment in the context of equal protection); *Turner v. E. Meadow Sch. Dist.*, No. 07-CV-4318 (JS)(AKT), 2009 U.S. Dist. LEXIS 29524, at *5 (E.D.N.Y. Mar. 31, 2009) ("Long-standing precedent unambiguously states that education is not a fundamental right.").

In an attempt to apply a heightened standard of review, Plaintiffs strain to analogize intermittent internet connectivity for emergency temporary remote learning purposes to the complete denial of education, relying on *Plyler v. Doe*, 457 U.S. 202 (1982) and *National Law Center on Homelessness & Poverty v. New York*, 224 F.R.D. 314 (E.D.N.Y. 2004). *See* Pls.' PI Mot. (Dkt. No. 9). In *Plyler*, the state of Texas "absolutely deprived" children that could not prove lawful admission to the United States of education through a law that denied education funding and school enrollment for that class of children. *Plyler*, 457 U.S. at 209. The State of Texas enacted that law to penalize the children for the misdeeds or misfortunes of their parents. *Id.* at 220-21.[5] Likewise in *National Law Center*, homeless children were completely denied access to education through the defendants' refusal to admit them to schools or to provide them transportation when they moved from shelter to shelter and needed to attend school in another district. 224 F.R.D. at 317. In both cases, defendants completely and permanently denied a class of students access to education. *Plyler*, 457 U.S. at 223-24 (the Texas statute "impose[d] a

---

[5] The Supreme Court has limited *Plyler* to the unique circumstances of that case. *Kadrmas*, 487 U.S. at 459 ("We have not extended this holding beyond the 'unique circumstances [of *Plyler*]'").

lifetime hardship on a discrete class of children not accountable for their disabling status"); *Nat'l Law Ctr.*, 224 F.R.D. at 322 (the defendants were "risking significant and enduring adverse consequences to the children").

In contrast, here, there are no allegations that Defendants have denied enrollment, access to education, or transportation to students in shelter. Instead, as the Amended Complaint alleges, Defendants have provided students in shelter, including the Plaintiffs' children, with internet enabled iPads carrying unlimited wireless data to enhance their cellular service, and are engaged in implementing a plan to provide WiFi for homeless children in shelters for remote learning during a once in a century global respiratory pandemic. The Amended Complaint also acknowledges that the sporadic lack of access to education experienced by the plaintiffs is due to *inconsistent* Internet connectivity during a *temporary emergency* transition to remote learning during a public health crisis. Am. Compl. ¶¶ 42, 45, 47, 51-52.

### 4. Plaintiffs' Claim Fails Under Either The Highly Deferential Rational Basis Review Or Heightened Scrutiny.

Even if Defendants' actions could be subject to an equal protection claim, those actions satisfy either the highly deferential rational basis review or heightened scrutiny.

When rational basis review applies, the government's classification bears "a strong presumption of validity," and "those attacking the rationality of the . . . classification have the burden to negative every conceivable basis which might support it." *Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356, 366-367, 2017 U.S. Dist. LEXIS 47998, *21-22 (S.D.N.Y. March 30, 2017) (quoting *FCC v. Beach Comm'ns*, 508 U.S. 307, 314-15 (1993)). "[T]he solution to the challenge of conducting rational basis review at the motion to dismiss stage . . . is to take as true all of the complaint's allegations and reasonable inferences that follow, and then apply the resulting facts in light of the deferential rational basis standard." *Id.*

(citation omitted). Thus, "[w]hen neither the complaint nor the non-moving party's opposition negate 'any reasonably conceivable state of facts that could provide a rational basis' for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted.'" *Id.* at 367 (quoting *Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011)). Under heightened review, the government's actions "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985).

Defendants' distribution of iPads with unlimited data service and decision to install WiFi at shelters are both rational means for providing access to education and substantially related to a legitimate state interest of providing access to remote learning. To the extent Plaintiffs allege Defendants should have installed WiFi sooner, a delay in providing benefits does not establish an Equal Protection claim absent allegations that the delay was the result of invidious discrimination, which Plaintiffs fail to allege. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 72 (3d Cir. 1996) (citing *Dandridge v. Williams*, 397 U.S. 471 (1970)) (delay in providing benefits was not an equal protection violation if the delay is "rationally based and free from invidious discrimination").

### B.  Plaintiffs Fail to State a Claim Under the McKinney-Vento Act

Plaintiffs claim that Defendants' "refusal to provide adequate WiFi access in shelters across the city" acts "as a barrier to the ability of homeless students to attend and succeed in school given the City's move to a blended learning program that included significant online instruction, " and that Defendants' "failure to take appropriate action to remove this impediment" violates the MVA. Am. Compl. ¶ 140.

Section 11431(1) sets forth the broad congressional policy underlying the MVA that State Educational Agencies shall "ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education, … as provided to other children and youths." 42 U.S.C. § 11431(1). In order to fulfill the congressional policy, the MVA empowers the Secretary of Education to grant funds to the States, and to local education organizations (LEO). *See* 42 U.S.C. § 11432-33. As a condition of receiving funds, States must submit a "plan to provide for the education of homeless children and youths within the State." 42 U.S.C. § 11432(g)(1). The plan must "describe how the State will ensure that local educational agencies in the State will comply" with the requirements of the statute. 42 U.S.C. § 11432.

As the D.C. Circuit Court has explained, the MVA "is a mix of large visions and gritty detail, combining specific sections dealing with the provision of education to homeless children and youths with [ ] broad congressional policy." *Lampkin v. District of Columbia,* 27 F.3d 605, 606 (D.C. Cir. 1994).  The MVA's "gritty details" provide "highly specific instructions for meeting a variety of needs of homeless children." *Lampkin,* 27 F.3d at 606, 610. They confer "entitlements to each homeless child, including: (1) the right of the parent or guardian to choose the school of origin or the school where students enroll in the location; (2) immediate assistance in obtaining immunizations or medical records necessary for enrolment in the new school; (3) immediate enrollment in the school in which enrollment is sought; (4) comparable transportation services to and from school." *Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 320 (E.D.N.Y. 2004).

Plaintiffs allege that as a condition of receiving $2.5 million in MVA funds in 2019, Am. Compl. ¶ 100, Defendants agreed to comply with all MVA requirements, but are violating two

specific provisions: (1) 42 U.S.C. § 11432(d)(2)[6], which provides that MVA grant funds shall be used to "provide services and activities to improve the identification of homeless children and youths . . . and enable such children and youths to enroll in, attend, and succeed"; and (2) 42 U.S.C. § 11431(2), which provides that is "policy of Congress" that State educational agency and local educational agencies will review and undertake steps to revise "laws, regulations, practices, or policies [that] may act as a barrier to the identification of, or the enrollment, attendance, or success in school of, homeless children and youths." Am. Compl. ¶¶ 100-101, 138-139.[7] Plaintiffs have no right of action to enforce these provisions of the MVA either directly pursuant to the statute or pursuant to a Section 1983 claim. Even if Plaintiffs could assert such a claim, they fail to state a claim that Defendants violate these provisions.

1. **Sections 11431(2) and 11432(d) Do Not Create Rights That Plaintiffs Can Enforce Either Through an Implied Private Right of Action or Through Section 1983**

Plaintiffs allege two claims to enforce alleged violations of § 11432(d)(2) and § 11431(2): a claim directly under the MVA and a claim pursuant to Section 1983. Both of these claims should be dismissed because neither the MVA nor Section 1983 provides Plaintiffs with the right to bring an action to enforce alleged violations of § 11432(d)(2) or § 11431(2).

---

[6] The Amended Complaint alleges that Defendants violate 42 U.S.C. § 11432(d), but specifically quotes only from 42 U.S.C. § 11432(d)(2). Am. Compl. ¶ 138.

[7] Plaintiffs also refer to § 11431(4), which provides that it is the policy of Congress that "[h]omeless children and youths should have access to the education and other services that such children and youths need to ensure that such children and youths have an opportunity to meet the same challenging State academic standards to which all students are held." However, Plaintiffs do not specifically assert Defendants violate this provision. Am. Compl. ¶ 140. Similarly, Plaintiffs cite and quote from § 11431(1), but do not specifically allege that Defendants violate this provision. *Id.* ¶¶ 97, 101, 137.

### a. The MVA Provides No Right of Action to Enforce Sections 11431(2) and 11432(d)(2).

The MVA does not include an explicit right of action for enforcement and no court has recognized an implied private right of action in any provision of the statute. An implied private right of action can only be found if a provision creates an enforceable right and the statute provides an implied judicial remedy for that right. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). The Supreme Court has significantly restricted the recognition of implied rights of action. *See Comcast Corp. v. Nat'l Ass'n of African-American-Owned Media*, 140 S. Ct. 1009, 1015 (2020). Here, Sections 11431(2) and 11432(d)(2) create no enforceable rights and there is no evidence in the statute that Congress intended to create a private remedy for violations of these provisions.

For Spending Clause legislation to form the basis for a private enforcement action, Congress must "unambiguously" demonstrate its intent to confer individually enforceable rights, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17-18 (1981) rather than vague "benefits" or "interests." *Gonzaga*, 536 U.S. at 283. The Supreme Court has "articulated a three-factor test for determining whether a statute creates" an enforceable right. *New York Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 78 (2d Cir. 2019) (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). First, "the statute must confer a right on the plaintiff as shown by use of rights-creating language—that is, language that demonstrates a statutory focus on the needs of the individual, rather than the operations of the regulated entity." *Poole,* 922 F.3d at 78 (citing *Gonzaga*, 536 U.S. at 287-88). Second, plaintiff must "demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence" and third, the "statute must unambiguously impose a binding obligation on the States." *Poole*, 922 F.3d at 78 (quoting *Blessing,* 520 U.S. at 340-41).

Sections 11432(d)(2) and 11431(2) merely outline broad policy goals and spending requirements for states that accept funding and do not demonstrate a clear Congressional intent to confer individually enforceable rights. First, neither section uses "rights-creating language" or focuses "on the needs of the individual." *Gonzaga*, 536 U.S. at 287-88. Section 11431(2) declares that it is Congressional policy that states "undertake steps to revise . . . laws, regulations, practices, or policies," that "may act as a barrier to the identification of, or the enrollment, attendance, or success in school of, homeless children." It speaks "only in terms of institutional policy and practice" that "cannot 'give rise to individual rights.'" *Gonzaga*, 536 U.S. at 288 (quoting *Blessing*, 520 U.S. at 344). Similarly, Section 11432(d)(2) regulates how states must use funds received under the Act, requiring such funds to be spent on unspecified services for the education of homeless students.[8] As the Supreme Court has explained, "statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

Second, these provisions do nothing more than provide broad goals for states accepting funding to "undertake steps" and spend MVA funds to provide unspecified services, which create no judicially administrable standard for assessing individual rights violations. *See Backer* ex rel. *Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (finding "no workable standard for judicial decision making" in the amorphous statutory directive that state Medicaid plans "provide such safeguards as may be necessary" to determine eligibility "in a manner consistent with simplicity of administration and the best interests of the recipients"). Rather than creating

---

[8] In addition, the other subsections of Section 11432(d) provide that states must spend funds received under the Act to implement professional development programs for agency personnel and to establish a new office in the State education agency, hardly "rights-creating language".

binding obligations to individual homeless students, Sections 11432(d)(2) and 11431(2) are "designed only to guide the State in structuring its systemwide efforts." *Blessing*, 520 U.S. at 344; *see also Davis v. Shah*, 821 F.3d 231, 246 (2d Cir. 2016) (finding no enforceable right where the statutory provision plaintiffs sought to enforce "focuses on programmatic aspects of the state plan as a whole, rather than on the specific benefits that must be accorded to individuals").

To the extent that courts have held that the MVA creates enforceable rights, these rights have been located in and limited to other provisions of the statute that give "highly specific instructions" for the education of homeless children. *See, e.g., Lampkin v. District of Columbia*, 27 F.3d 605, 610 (D.C. Cir. 1994); *see also Nat'l Law Ctr. on Homelessness & Poverty v. New York*, 224 F.R.D. 314, 320 (E.D.N.Y. 2004). Courts have recognized a private right of action under Section 1983 to enforce the Act's specific requirements that school districts must: (1) immediately enroll a homeless student in the school that aligns with the child's best interest, giving due consideration to the parent's request, *see* 42 U.S.C. §§ 11432(g)(3)(A)-(C)); *Lampkin*, 27 F.3d. at 610-12;[9] *Nat'l Law Ctr.*, 224 F.R.D. at 320; (2) provide transportation services to homeless children that are comparable to transportation services provided to other students, *see* 42 U.S.C. § 11432(g)(4); *Lampkin*, 27 F.3d. at 610-12; *Nat'l Law Ctr.*, 224 F.R.D. at 320; and (3) provide a written explanation of the enrollment decision and, if the parent disputes the decision, enroll the child in the school in which enrollment is sought pending resolution of the

---

[9] In 2002, the McKinney Act was reauthorized as part of the No Child Left Behind Act (NCLBA), Pub. L. No. 107-110, 115 Stat. 1989, and underwent a revision. Section 11432(e)(3), as referenced in *Lampkin*, required LEOs to continue a child's education at either the school the child attended when permanently housed or the school that non-homeless students in the area the child is living in are eligible to attend, whichever is in the best interest of the child, with consideration given to the parents' wishes. Currently, Section 11432(g)(3) provides homeless students with the same rights.

dispute, s*ee* 42 U.S.C. §§ 11432(g)(3)(E)(i)-(ii)); *N.J. v. New York*, 872 F. Supp. 2d 204, 209-13 (E.D.N.Y. 2011).[10] The recognition of enforceable rights in these provisions has no bearing on whether sections 11432(d)(2) and 11431(2) create enforceable rights. The relevant inquiry is not whether the statute "generally [gives] rise to rights" but rather whether the "specific statutory provision" that the plaintiff seeks to enforce does so. *Blessing*, 520 U.S. at 342; *see also Sandoval*, 532 U.S. at 288

In addition, there is no evidence in the statute that Congress also intended to create a private remedy for violations of Sections 11431(2) and 11432(d)(2). *See Sandoval*, 532 U.S. at 286. Section 11432 mandates that states develop robust administrative processes to resolve eligibility, school selection, and enrollment disputes as a condition for receipt of federal funding, *see* 42 U.S.C. § 11432(g)(1)(C); *id.* § 11432(g)(3)(E), but provides no method for addressing individual claims arising from state compliance with Section 11432(d)(2)'s spending requirements or Section 11431(2)'s policy goals. This disparate treatment suggests that Congress contemplated treating individual enrollment claims, like those raised in *Lampkin* and *National Law Center* under Section 11432(g), differently from the enforcement of Section 11431(2)'s policy goals and Section 11432(d)(2)'s state spending requirements, which are left exclusively to the Secretary's oversight. Because Sections 11431(2) and 11432(d)(2) create no enforceable rights and nothing in the text of the statute indicates an intent to create a private right of action, Plaintiffs have no implied right of action to enforce these provisions.

---

[10] In *S.C. v. Riverview Gardens Sch. Dist.*, No. 18-cv-04162-NKL, 2019 U.S. Dist. LEXIS 29282, at *21-23 (W.D.Mo. Feb. 25, 2019), the court allowed claims that the state violated §11431 to proceed without grappling with whether plaintiffs had a private right of action to enforce the broad statements of congressional policy in that provision. However, in that case, plaintiffs also asserted that the state violated its specific obligation to assist and monitor the school district and, in contrast to here, had identified policies regarding residency requirements and discipline that created barriers to "'the identification, enrollment, attendance, [and] success' of homeless youth in school" and had not been revised.

**b. Section 1983 Provides No Right of Action to Enforce Sections 11431(2) and 11432(d)(2).**

Although Section 1983 may also provide a right of action to enforce federal law, as with a claim asserted directly pursuant to a statute, Section 1983 only enables Plaintiffs to enforce a federal law that confers rights on the plaintiff. *See Gonzaga,* 536 U.S. at 283 (plaintiff must have an "unambiguously conferred right to support a cause of action brought under § 1983"). As discussed above, Sections 11431(2) and 11432(d)(2) create no enforceable rights and, as a result, Plaintiffs' Section 1983 claim fails. *Id.* at 285.

Even if the Court could find that Sections 11431(2) and 11432(d)(2) create enforceable rights, the presumption that such rights are enforceable under Section 1983, is rebutted when Congress demonstrates its intent to foreclose the use of Section 1983 as a remedy for violations of those rights. *See Blessing*, 520 U.S. at 341. Here, the potential for federal administrative oversight, through the termination of funding, combined with the "judicially unadministrable nature" of Sections 11431(2) and 11432(d)(2), as discussed above, forecloses enforcement of these provisions through Section 1983. *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 328-29 (2015) (while federal oversight "might not, *by itself*, preclude the availability of equitable relief . . . . it does so when combined with the judicially unadministrable nature" of the provision plaintiffs sought to enforce); *see also Poole*, 922 F.3d at 85 (allowing claims to proceed under Section 1983 where, in contrast to *Armstrong*, federal oversight existed but the statutory provisions at issue "are not judicially unadministrable").

Because Plaintiffs' allegations fail to establish that Sections 11431(2) and 11432(d) create any enforceable rights, and because Congress has provided no private right of action to enforce those provisions, their claims under the MVA should be dismissed.

### 2. The Amended Complaint Establishes that Defendants are Complying with the MVA

Section 11432(d)(2) requires MVA grant funds to be used to "provide services and activities to improve the identification of homeless children and youths . . . and enable such children and youths to enroll in, attend, and succeed." The Amended Complaint lacks any allegation that Defendants have failed to use their MVA grant funds for the purpose required by section 11432(d)(2). Moreover, the complaint alleges that Defendants have provided plaintiffs with iPads with cellular data and are installing WiFi, which are plainly services to enable homeless children to succeed in school during this emergency temporary transition to remote learning. In any case, the requirement that MVA grant funds must be used to "provide services" does not require the provision of any specific service and therefore cannot reasonably be read to require Defendants to install WiFi at all shelters.[11]

Section 11431(2) sets forth Congressional policy that Defendants "*undertake steps*" to revise any law, regulation, practice, or policy that acts as "barrier to the identification of, or the enrollment, attendance, or success in school of, homeless children." Assuming arguendo Plaintiffs' allegation that Defendants' policy of refusing to install WiFi acts "as a barrier to the ability of homeless students to attend and succeed in school given the City's move to a blended learning program," is true, Am. Compl. ¶ 140, Plaintiffs acknowledge that on October 26, 2020, Mayor de Blasio announced the City's policy to ensure that every shelter gets WiFi. Am. Compl.

---

[11] Moreover, Congress could not have intended that Defendants are obligated to undertake a massive WiFi installation project for close to 200 homeless shelters and thousands of homeless children as a condition of receiving only $2.5 million, a fraction of the costs of such a project – notwithstanding that the funds would also need to cover other "services and activities."

¶ 81. This type of revision of policy is exactly what section 11431(2) requires, and, accordingly the Amended Complaint admits Defendants' compliance with the requirements of the MVA. [12]

### C. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

Because Plaintiffs' federal law claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(1) and (3). Although dismissal is not mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, n.7 (1988); *see also Valencia v. Sung M. Lee,* 316 F.3d 299, 306-308 (2d Cir. 2003) (where no federal claims remain, exercise of supplemental jurisdiction to decide state law claims against the City was an abuse of discretion, as the state law claims involved unsettled and complex questions regarding the balancing of important policies of state government); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and

---

[12] Even if the Amended Complaint could be generously read to allege that Defendants violate § 11431(1), any such claim would fail. The Amended Complaint alleges that there are 1 million students enrolled in the City's public school system and Defendants distributed an iPad with unlimited cellular data to 300,000 students, all of whom, whether homeless or non-homeless, faced some technological barriers to participating in remote learning. In addition, Plaintiffs have not, and could not, allege that Defendants have installed or otherwise provided non-homeless students with WiFi to access remote learning. As a result, Defendants' alleged "refusal to provide adequate WiFi access in shelters across the city" does not implicate the MVA's overarching policy of ensuring that homeless students have "equal access to the same free, appropriate public education, . . . as provided to other children."

comity may dictate that these questions be left for decision by the state courts. This is particularly true if the federal claim on which the state claim hangs has been dismissed"). Both the NYEL § 3209 and Education Article claims raise novel and complex issues of state law that counsel against the exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1).

1.  **The New York Education Law § 3209 Claim Raises Novel and Complicated Issues of State Law That May Have Sweeping Implications For Local Governments and School Districts Across New York**

In the Court's Order of December 30, 2020, the Court held that Plaintiffs sufficiently stated a claim under § 3209 to proceed to a preliminary injunction hearing. The Court concluded that "Plaintiffs have adequately pleaded that transitioning to remote learning without providing homeless students reliable means to access the internet creates the kind of 'barriers to the . . . attendance of homeless children in school or their receipt of comparable services,' as contemplated in the [N.Y. Educ. Law § 3209(6)(b)]." Order at 6.[13] In addition, the Court also held that "under the circumstances, the means to reliably access the internet falls within the scope of the 'necessaries' that officials must provide to enable homeless students to 'attend' school for the duration of the pandemic" pursuant to NYEL § 3209(7). Order at 8. Plaintiffs' claim under § 3209 could be interpreted as obligating all school districts across the state to provide internet access not just to homeless students, but all "indigent students" for the entire duration of the pandemic. NYEL § 3209(7) applies to "indigent children," and is not limited to

---

[13] Defendants recognize that the Court has already held that Plaintiffs sufficiently state a claim under § 3209 to proceed to a preliminary injunction hearing; however, Defendants respectfully do not concede, as stated in the Order, that NYEL § 3209(6)(b), which merely requires the New York State Commissioner of Education to ensure that local school districts "review and revise any local regulations, policies, or practices" obligates Defendants to provide internet access to homeless students. Defendants' position is that their efforts to date satisfy the obligation in the statue to "review and revise" policies and Defendants incorporate their arguments made in their Opposition to the Plaintiffs' Preliminary Injunction Motion (Dkt. No. 32) that this claim fails as a matter of law to preserve the issue for appeal.

students in shelter. *See also* New York Social Service Law § 397 (mirroring the language in NYEL § 3209(7)). Principles of comity and federalism dictate declining to assert supplemental jurisdiction over the NYEL § 3209 claims. *Morse v. Univ. of Vt.*, 973 F.2d 122, 128 (2d Cir. 1992) ("it may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim, particularly where the state cause of action that remains for decision . . . involves novel questions of state law").

### 2. The Education Article Claim Should Be Dismissed, But At a Minimum Raises a Question of First Impression About the New York Constitution

Plaintiffs' Education Article claim fails as a matter of law, and the Court should decline to exercise supplemental jurisdiction, because the Plaintiffs' allegations fall well outside the contours delineated by existing New York Court of Appeals case law. The Education Article requires that "[t]he [New York State] legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. art XI, § 1. In a series of cases over the last 40 years, the New York Court of Appeals has outlined the contours of this Constitutional right. It has explained that the Education Article provides a "mandate that the opportunity for a sound basic education be provided to all," *N.Y. Civ. Liberties Union v. State*, 4 N.Y.3d 175, 178-179 (NY 2005), but "does not . . . contain an egalitarian component," *Reform Educ. Fin. Inequities Today v. Cuomo*, 86 N.Y.2d 279, 284 (1995). "[E]ven gross educational inadequacies . . . standing alone, [are not] enough to state a claim under the Education Article." *N.Y. Civ. Liberties Union*, 4 N.Y.3d at 178-79; *see also Paynter v. State*, 100 N.Y.2d 434, 441 (2003). Instead, "an Education Article claim requires two elements: the deprivation of a sound basic education, and causes attributable to the State." *N.Y. Civ. Liberties Union*, 4 N.Y.3d at 178-79; *Aristy-Farer v. State of New York*, 29 N.Y.3d 501, 521-22 (NY 2017). "Allegations of academic failure alone, without allegations that the State

somehow fails in its obligation to provide minimally acceptable educational services, are insufficient." *Paynter v. State*, 100 N.Y.2d 434, 441 (2003).

Plaintiffs fail to plead the necessary elements of an Education Article cause of action as articulated by the Court of Appeals, and any expansion of the scope of the Education Article under the New York Constitution should be left to New York State courts to resolve under these circumstances. First, a claim under the Education Article must plead the deprivation of a sound basic education attributable to the State. *Campaign for Fiscal Equity, Inc. v. State of New York*, 100 N.Y.2d 893, 908 (NY 2003) ("*CFE II*") (the issue is "whether the State affords New York City schoolchildren the opportunity for a meaningful high school education"); *see also N.Y. Civ. Liberties Union*, 4 N.Y.3d at 178-79. Every successful Education Article cause of action has alleged a failure to provide a sound basic education that is causally connected to inadequate State resources. *See, e.g.*, *Campaign for Fiscal Equity v. State*, 86 N.Y.2d 307, 318 (NY 1995) (plaintiffs alleged an inadequate State funding system); *Aristy-Farer*, 29 N.Y.3d at 514-17 (allowing claims that included specific factual allegations of insufficient State resources to proceed); *Davids v. State*, 159 A.D.3d 987, 991 (2d Dep't 2018) (claims that State teacher-tenure statutes led to inadequate resources, namely quality teaching, survived motion to dismiss); *cf. Paynter v. State,* 100 N.Y.2d 434, 441 (NY 2003) (upholding the dismissal of plaintiff's claim that arose out of State's failure to mitigate demographic factors rather than a lack of funding). Here, Plaintiffs allege only that Defendants have failed to provide a sound basic education to Plaintiffs "because they have failed to provide the internet access necessary to enable Plaintiffs to access remote instruction from their schools during the COVID-19 pandemic." Am. Compl. ¶ 127. Because Plaintiffs fail to allege a causal link to the State's failure to provide funding or other resources, their complaint fails to state a viable Education Article cause of action.

Relatedly, this claim also fails because they plead alleged failures relating to a small subset of the 1.1 million students that make up the New York City school district, rather than a district-wide failure. The Court of Appeals has "rejected … claims premised on failures in individual schools, noting the importance of pleading specific 'district-wide' failures." *Aristy-Farer*, 29 N.Y.3d at 510. This pleading requirement is intertwined with the requirement that an Education Article claim must plead a deprivation of a sound basic education that is caused by State's failure to provide adequate resources because "the Education Article enshrined in the Constitution a state-local partnership." *N.Y. Civ. Liberties Union v. State*, 4 N.Y.3d at 181-82. Pursuant to that partnership because "the State is responsible for providing sufficient funding to school districts" and "school districts are the local units responsible for receiving and using state funding," a claim under the Education Article requires that a district-wide failure be pleaded. *Id.* at 182. Plaintiffs' allegations that certain shelters are not adequately equipped with WiFi services for some students clearly fall short of the kinds of district-wide failures required by the Court of Appeals.

Finally, this claim also fails because the remedy Plaintiffs seeks – a Court order directing the installation of WiFi – is foreclosed. The Court of Appeals has held that it is up to the State, not the Court, to craft the appropriate response to remedy a violation of the Education Article. *See Aristy-Farer*, 29 N.Y.3d at 515 (citing *CFE II*, 100 N.Y.2d at 925) ("it will be up to the state to craft an appropriate response, subject to judicial review, because the courts have 'neither the authority, nor the ability, nor the will, to micromanage education financing'").

Both state law claims must be dismissed, and the novel and complex issues implicated by Plaintiffs' state law claims should be left for resolution by state courts.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that this Court grant

Defendants' motion to dismiss.

Dated:          New York, New York
                    January 24, 2021

                                             Respectfully submitted,


                                             JAMES E. JOHNSON
                                             Corporation Counsel of the City of New York
                                             Counsel for City Defendants
                                             100 Church Street
                                             New York, New York 10007
                                             (212) 356-2273


                                             By:      _____/s/_____
                                                      Sabita Krishnan
                                                      Hope Lu
                                                      Melanie Ash
                                                      Gavin Mackie
                                                      Andrea Nishi
                                                      Assistant Corporation Counsels

26